### UNITED STATES *v.* MOORE.

*(District Court, N. D. Illinois.* November 20, 1883.)

SENDING MATTER CONCERNING LOTTERIES THROUGH THE MAILS—DECOY LETTERS.
    The offense of sending letters or circulars concerning lotteries through the mails is complete under section 3894 of the Revised Statutes, although the circulars in question are sent in reply to letters written by a detective, under a fictitious name, for no other purpose than to obtain evidence of the commission of the offense.

Indictment under Section 3894, Rev. St.

*J. B. Leake,* U. S. Dist. Atty., for the prosecution.

*A. S. Trude,* for defendant.

BLODGETT, J., *(charging jury.)* The law under which this indictment is found provides that no letter or circular concerning lotteries shall be carried in the mails. The statute, as originally passed by congress, provided that no letter or circular concerning *illegal* lotteries should be so carried. At that time a great many of the states in the Union had prohibited lotteries within their jurisdiction, while in others they were permitted; and difficulty arose in the administration of this statute by reason of the contention that in some states lotteries were still legal, and therefore not within the scope of this act. In 1876, congress, by an amendment of the statute, struck out the word *illegal,* so that the statute, as amended, now reads, that no letter or

circular concerning lotteries shall be carried in the mails, thereby making all matter concerning lotteries unmailable matter.    The supreme court of the United States has stated, in two different opinions, that the intention of congress, in passing the statute in question, was to prohibit the sending of matter concerning lotteries through the mails, because of the immoral tendencies of lotteries, it being contrary to public policy to carry, as mail matter, anything concerning them, inasmuch as they tended to demoralize the public mind. *Stone* v. *Mississippi*, 101 U. S. 821; *Ex parte Jackson*, 96 U. S. 736. By the same decisions the constitutionality of this statute is sustained.

I understood the learned counsel for the defense to state, in his opening addressed to you, that he conceded it was useless to deny that the defendant was engaged in the lottery business, but he insisted that the defendant had not used the mails, and challenged the government to prove that the defendant had used the mails for the purpose of carrying on the business.    This narrows the issues in this case down to the simple question, does the proof in this case satisfy you that the defendant deposited, or caused to be deposited, in the mails the matter concerning lotteries charged in this indictment?

The charges in the indictment, which the government has attempted to prove, specify three distinct offenses:    The first is that the defendant mailed at the post-office in Chicago a letter directed to Jim C. Holmes, Virden, Illinois, containing certain circulars and lottery tickets; the second is that the defendant mailed at the Chicago post-office a letter containing certain circulars and lottery tickets directed to R. W. Williams, box 302, Collinsville, Illinois; and the third offense charged is the mailing of a letter at the Chicago post-office containing similar inclosures directed to Sam Moorey, at Shiloh, Illinois.    It is admitted by the witnesses for the government that the names of Holmes, Williams, and Moorey are fictitious names, and that the letters which it is charged the defendant mailed, containing these circulars and tickets, were in answer to letters written by Mr. McAfee and Mr. Mooney, respectively, using the fictitious names of Holmes, Williams, and Moorey, addressed to the defendant, B. Frank Moore, 127 La Salle street, Chicago, inclosing money, and requesting that he invest it for them, respectively, in pursuance of an advertisement of certain lotteries, which had been cut from a newspaper, and in which they also requested a reply by mail.

It is claimed, on the part of the government, that the proof tends to show that these letters mailed in Chicago, addressed to Holmes, Williams, and Moorey, were mailed by the defendant in response, or answer, to the Holmes, Williams, and Moorey letters, written by McAfee and Mooney.    This court in several cases has had occasion to pass upon the question as to whether the detection of crime, by means of decoy letters, is allowable under the law, and has uniformly charged the jury that it is an allowable method of detecting crime, stating in

two cases, which I have in mind, that it is hardly possible to detect crimes against the postal laws in any other way.

Allusion was made, by the counsel for defendant, to certain comments made by a learned brother on the bench, Judge TREAT, of St. Louis, in some case in which McAfee appeared before him as a witness. I do not know what peculiar facts appeared in that case which gave occasion for the comments said to have been made by my learned brother as to the conduct of this witness, but must presume that it was a case which justified what he then said, but there is nothing in this case, in my estimation, — and I say it to you with due regard as to the responsibility of the court, — that discredits the testimony of Mr. McAfee. His testimony stands before you like that of any other witness. The question for you to determine is whether you will believe McAfee under oath, taking into consideration the explanation which he has given in reference to his methods of work. It certainly ought not to discredit any witness before a jury to have it brought out that he, as an individual member of society, has voluntered to detect crime without appointment or without any official position. Nor ought it to discredit a witness, perhaps, any more because he is the agent of some organization and is employed to carry out its objects for the suppression of vice. If it is a part of the purpose of that organization to suppress lotteries, you must say whether an individual, acting towards the ends of that orginazation, as its agent, is to be discredited, while using methods allowable under the law. If the defendant received the letters, copies or which are in evidence, purporting to come from Holmes, Williams, and Moorey, he could have answered them without violating the law. He must be presumed to know what the law is in regard to sending matter concerning a lottery through the mails; and sending such matter in response to a letter from a fictitious person is just as clear a violation of the law as if sent to a real person described by the name to which the letter was addressed. The name of the person to whom the inhibited matter is addressed is no part of the offense, but the question is, did the defendant send through the mails a letter or circular concerning lotteries; and you have no concern with the good faith of the person who incited or induced, by a decoy letter, the sending of such matter any more than you have with the good faith of a person who sends marked money through the mails in order to detect one who is stealing from the mail. When defendant received the letters in question he was under no obligation to so answer them as to violate the law.

It is for you to determine whether the proof on the part of the government shows that, in response to these registered letters, confessedly written by McAfee and Mooney, addressed to the defendant at his place of business in this city, certain letters were received containing these lottery circulars and tickets. There can be no doubt, on an inspection of these circulars and tickets, that they concern or

refer to lotteries; they will speak for themselves, and you will have them in the jury-room, so that you may see just what they are.

The testimony on the part of the government shows without dispute that, some time in January, 1882, the defendant gave an order in writing to the assistant postmaster of this city, authorizing the delivery of his registered mail matter to a Mr. Halsey, and the testimony on the part of the government shows without dispute that his registered mail, since that time, has been delivered to Mr. Halsey, and that the three letters in question, postmarked at Virden, Collinsville, and Shiloh, Illinois, were delivered to Halsey, and receipted for by him. The question of fact for you to pass on is, "Does this connect the defendant with the sending of these circulars and tickets?" Are you satisfied, beyond a reasonable doubt, that these letters written by McAfee and Mooney, from Virden, Collinsville, and Shiloh, were registered letters, and were delivered in due course of mail to defendant's agent here in this city, and that, in response to those letters, these letters containing circulars and tickets were mailed, either by the defendant himself, or by his direction, and sent through the mail as addressed? That is the question. Does the fact that these registered letters from Holmes, Williams, and Moorey, which came into the hands of the agent, Halsey, and were responded to in the manner exhibited by the proof, satisfy you, beyond a reasonable doubt, that defendant sent through the mail the lottery tickets and circulars in evidence? If so, you should find the defendant guilty; but if you are not satisfied by the testimony of the government, beyond a reasonable doubt, that the defendant did send these circulars, then he should have the benefit of that doubt, and you should render your verdict accordingly.

See *Bates* v. *U. S.* 10 FED. REP. 92, and note, 97.