SEVENTH NAT. BANK OF PHILADELPHIA *et al.* *v.* SHENANDOAH IRON CO.[1]

*(Circuit Court, W. D. Virginia.* August, 1887.

1. CORPORATIONS—INSOLVENCY—LABORER'S LIENS—IRON MANUFACTURING COMPANY.
    An incorporated iron manufacturing company does not come within the equity principles that give the employes of a railroad corporation a prior lien on its current earnings for the payment of their wages.

2. SAME—SUPPLIES—GOODS FURNISHED LABORERS ON ORDERS.
    An iron manufacturing company gives to its employes, who are laborers, orders on a mercantile firm for merchandise in payment of their wages. The goods delivered by the firm to the laborers in payment of these orders are not "supplies furnished the company, necessary for its operation;" and the orders given on the firm therefor by the company are not liens prior to the mortgage bonds on the franchises, gross earnings, real and personal property of the company, under the Virginia statute as amended by Acts 1878-79.

3. SAME—RIGHTS OF ACCEPTOR OF ORDER.
    Nor is the holder of these orders, after their payment by the mercantile firm, an assignee of the labor claims for which the orders were given; and he has no lien, under the statute, prior to that of the mortgage bond-holders.

4. SAME—WAGES—SALARY OF PRESIDENT.
    The president of an iron manufacturing company is not embraced in the language of the Virginia statute, giving priority of lien to secure the wages of certain employes; nor does designating him "general manager" bring him within the class of such employes.

5. SAME—PRESENTMENT OF CLAIM.
    The limitation of a statute requiring claims of employes and others to be recorded within six months, after the same shall have fallen due, in order to secure their priority, is not suspended by the pendency of a suit in which re-

[1] Reported by F. T. Barr, Esq., of the Abingdon bar.

ceivers have been appointed; but the limitation is suspended by a decree of reference to a master to take an account of debts and their priorities against the defendant company

**6. SAME—SERVICES OF RAILROAD AS CARRIER.**

A railroad company can have no lien under the Virginia statute, prior to that of the mortgage bondholders, on the ground of "supplies furnished," when its account is for freight charges, for carrying iron, coal, etc., for an iron manufacturing company.

(*Syllabus by the Court.*)

In Equity. On exceptions to master's report.

Complainants, the Seventh National Bank of Philadelphia, a creditor of defendant in the sum of $25,000; the Union Trust, Safe-Deposit & Insurance Company, holder of defendant's promissory note for $10,000, and of first-mortgage bonds of defendant to the amount of $15,000; the Eighth National Bank of Philadelphia, holder of two promissory notes of defendant for $7,000 each, and of $19,000 of its first-mortgage bonds; and John Milnes, claiming to be a creditor of defendant for the amount of $64,421.34 for advances and supplies made by him to defendant, and also its accommodation indorser to the amount of $332,500,—presented their bill setting forth these facts, and that defendant had, on May 26, 1881, executed and delivered to the Fidelity Insurance Trust & Safe Deposit Company, as trustees, a first mortgage, bearing date April 1, 1881, upon all its property and franchises, to secure bonds of various denominations to the amount of $500,000, of which $349,500 had been issued to persons unknown to complainants, and now holding same, and the remaining $150,500 had been pledged from time to time by defendant as collateral security for its outstanding promissory notes; that defendant's floating indebtedness amounted to about $477,343.58, evidenced by its promissory notes aggregating $372,648.74, and the residue by open book-accounts; that these notes were drawing to maturity on 11th September, 1885, and at intervals thereafter, and all prior to January 1, 1886; that by reason of lack of funds the first, a note for $2,890.57, would be protested, the credit of defendant utterly gone, and it would be impossible to continue its mining and manufacturing operations,—the result of which would render it impossible to pay its coupons on its first-mortgage bonds, and thus bring about a foreclosure of the mortgage; that the property of defendant was in such condition that continuance of its manufacturing would probably enable a realization of a sufficiency to pay its coupons, and from time to time reduce its floating indebtedness; that it was necessary for the protection of the holders of its floating indebtedness and those furnishing supplies not to be interfered with; and praying for an injunction and appointment of receivers, and for general relief. Injunction granted September, 1885, and following were decrees appointing receivers, orders allowing them to issue certificates, a reference to master to take account of indebtedness of defendant. Under the last order the master made his report, to which 13 exceptions were filed, on which exceptions the opinion was rendered.

*W. H. Travers* and *John G. Johnson*, for plaintiffs.

*J. S. Clark*, for defendant and mortgage bondholders.
*Barton & Boyd*, for other creditors.

PAUL, J. The questions to be decided by the court at this time are presented for its consideration by exceptions filed by the first-mortgage bondholders to the special commissioner's report of liens. These exceptions are 13 in number. The first five relate to the claims allowed by the master in favor of J. W. Rogers. To these claims, amounting in the aggregate to $24,984.83, the master has allowed priority to the lien of the first-mortgage bonds. These claims against the company originated in an agreement made between the company and B. & T. J. Milnes, formerly engaged in the mercantile business at Milnes, the location of the company's iron-works, and who were succeeded in their business as merchants by William Milnes, Jr., and J. W. Rogers, under the firm name of Rogers & Milnes, who continued the business until March 1, 1886, when this firm dissolved, and J. W. Rogers became the liquidating partner, and as such is the claimant of the amount in controversy. The agreement referred to provided that the company, in paying off its employes in store orders, should give its orders on this store, and on none other. Under this arrangement store orders were given to its employes by the company on these successive firms, the transactions running through several years, and amounting to a large sum, on which considerable payments were made from time to time, but still leaving a large balance due to J. W. Rogers on account of these store orders, and a small balance of $118.23, due on account of materials furnished by the store directly to the company.

Counsel for Rogers in their argument have based his right to a lien prior to that of the bondholders on two grounds: *First.* That, as the statute of Virginia passed March 21, 1877, (see Acts Assem. 1876–77, p. 188, as amended by act of April 2, 1879, see Acts Assem. 1878–79, pp. 352, 353,) gives to the laborers who received the store orders from the company "a prior lien on the franchise, the gross earnings, and on all the real and personal property of said company which is used in operating the same," that Rogers and Milnes, having paid off these orders, became assignees of the same, and as such assignees they have a right, under the Virginia statute above quoted, to enforce for their benefit the lien which the original holders of the orders, to-wit, the laborers, held against the company, as security for the payment of their wages. *Second.* That, independent of the provisions of the statute, he is entitled under the general principles of equity to the payment of these claims, as being for supplies furnished, in preference to the lien of the bondholders. Numerous cases are cited to maintain this position, among them: *Fosdick* v. *Schall*, 99 U. S. 251; *Trust Co.* v. *Souther*, 107 U. S. 594, 2 Sup. Ct. Rep. 295; *Burnham* v. *Bowen*, 111 U. S. 777, 778, 4 Sup. Ct. Rep. 675; *Trust Co.* v. *Railway Co.*, 117 U. S. 434, 6 Sup. Ct. Rep. 809. We think a very brief examination of this doctrine of equity principles will eliminate it from the discussion of the questions before us. The doctrine is a new one, and has arisen out of, and, as far as the court

has been able to ascertain, is confined to, railroad corporations. All the authorities cited are cases of controversies touching the rights of creditors of railroads, and, so far as we have found, no authority for this innovation on the rights of the prior lienholders of a corporation such as we are dealing with. It rests upon the principle that the current expenses must be paid out of the current earnings; and in order for its application it must be shown that there has been a diversion of the current earnings from the payment of current expenses and that they have been applied to the benefit of the lienholders. This is the doctrine as laid down in *Fosdick* v. *Schall*, 99 U. S. 254, and the succeeding decisions, state and federal, on this subject. The chief reason assigned for its existence in connection with railroad corporations, is that a railroad is a *quasi* public corporation. The public has such an interest in a railroad that, in the language of Chief Justice WAITE in *Burnham* v *Bowen*, 111 U. S. 781, 4 Sup. Ct. Rep. 675, it must be treated as a "going concern." To the same effect is the language of Judge HUGHES in *Atkins* v. *Railroad Co.*, 3 Hughes, 317. Should we admit the application of the equity principles contended for to a corporation like the Shenandoah Iron Company, and were it possible for us to admit that the claims of Rogers are for materials and supplies furnished the company, there yet is no evidence in this case of the existence of current earnings, which have been diverted from the payment of current expenses, and applied to the benefit of the mortgage bondholders, so as to constitute the claims of Rogers a prior lien to that of the bondholders. The court is clearly of opinion that the general principles of equity invoked do not establish a lien in favor of J. W. Rogers prior to that of the mortgage bondholders.

Let us then examine the question whether the evidence in this case establishes, under the provisions of the Virginia statute 1876–77, as amended by the act of 1878–79, a lien prior to that of the mortgagees, in favor of J. W. Rogers. In the *memoranda* of liens filed in the clerk's office of the county court of Page county, December 18, 1885, by Rogers & Milnes,—are one for $9,657.06, the other, January 2, 1886, for $2,268.46; both of which sums are evidenced by certain notes therein specified,—these sums of money are claimed to be due to the firm of Rogers & Milnes "for supplies furnished and necessary to the operation of the said Shenandoah Iron Company." The master, in his report, and the evidence shows it, says that but an inconsiderable part of these sums were for supplies furnished the company. He bases his report of these liens on the grounds that "Rogers & Milnes are practically assignees of the wage claims and entitled to the same priority as would be accorded to the assignors;" meaning by the wage claims the orders given by the company to its laborers on the firm of Rogers & Milnes, and by them paid to the holders in merchandise. Counsel for these claimants have not pressed the demand for the priority of these claims on the ground that they are for supplies furnished and necessary to the operation of the company. It is difficult to see how a substantial argument can be built upon the proposition that the coffee, sugar, clothing, and innumerable other articles sold by this firm to the company's employes on

the store orders of the company can be classed as "supplies" furnished the company and necessary for its operation, and under the Virginia statute entitled to priority over a lien created by mortgage. The language of the statute, "supplies necessary for the operation" of such company, embraces such things as contribute directly to carrying on the work in which the company is engaged. In the case before us supplies must consist of something that it is necessary for the company to purchase in order that it may properly carry on its business of making iron. The position that the goods sold by Rogers & Milnes to the employes of the Shenandoah Iron Company are supplies furnished the company and necessary for its operation, is not tenable. These goods were not sold to the company, but to its employes, in payment and satisfaction of orders drawn by the company in favor of its laborers on the firm of Rogers & Milnes.

As to the position taken by the master in his report, and contended for by counsel for Rogers, that Rogers and Milnes are assignees of the store orders given by the Shenandoah Iron Company to its laborers on the firm of Rogers & Milnes, in payment of wages due for labor, is also untenable. That these parties are assignees of these innumerable small orders, it seems to the court, from the evidence in this cause, must have been an afterthought and an afterclaim with them. As before stated, their liens were filed as "for supplies necessary for the operation of the company." Had there been an assignment of these orders (granting them to be assignable) to the firm by the laborers in whose favor they were drawn, the rights of the assignees under the statute are so clearly defined that they surely would have filed their liens as assignees, and not for supplies furnished the company. But, granting that these orders are assignable by the payee to the drawee, the assignment carrying with it the security by lien which was inherent in the debt due from the drawee to the payee, is there any evidence in this case of an assignment of these orders by the original holders to Rogers & Milnes? The court finds none. Who must necessarily be the parties to the assignment? Clearly the laborers, the holders of the orders, the creditors of the Shenandoah Iron Company, of the one part, and Rogers & Milnes of the other part. The laborers are the parties in whom the statute vests the lien, with the rights and power to perpetuate it by recordation, and gives to them the power to assign their debts; and if they have not filed their lien the assignees can have the same recorded. The definition of "assign" is "to make a right over to another; as to assign an estate, an annuity, bond," etc., over to another. Bouv. Law Dict. "To assign." Webster's definition of "assignment" (in law) is, "A transfer by one person to another of any property, real or personal, or of any estate or right therein." In this case the only persons who could make a transfer to Rogers & Milnes of these debts due for labor were the laborers themselves. It is not pretended that they made any contract with Rogers & Milnes for an assignment of these claims. Any agreement, if such there had been, between the company and the firm of Rogers & Milnes, as to the rights the firm should have in these claims, must go for naught. The company had

nothing to assign.    It had no control over these debts it owed to its laborers.    Any agreement it made with Rogers & Milnes as to what rights and priorities this firm should have as to the orders drawn upon it and paid by it over the lien of the mortgage bondholders is a mere nullity.    The parties in whom the law vests the lien for wages, the laborers, were not parties to any contract of assignment of their claims to Rogers & Milnes.    This contract between the iron company and Rogers & Milnes was of a purely business character between these two concerns; perhaps for the mutual benefit of both, clearly so for the firm.    It must have been so understood by the members of the mercantile firm; Mr. Milnes being the president of the Shenandoah Iron Company and Mr. Rogers its secretary, as the evidence shows.    The laborers were no parties to the agreement that all orders for wages should be given on the store of Rogers & Milnes, and on no other store.    Their claims were extinguished when they took their orders to the store and they were paid. They were as dead as if they had taken checks on a bank, and these had been cashed on presentation.    There was no further life in their claims against the company    A new debt came into existence, that due from the company to Rogers & Milnes; and the lien inherent in the debts due from the iron company to the laborers did not attach to this new debt due from the company to Rogers & Milnes.    These exceptions must be sustained.

The eighth exception is to the allowance to William Milnes, Jr., president and general manager of the Shenandoah Iron Company, of his salary from March 15, 1885, to September 13, 1885, amounting, with interest, to $1,623.69, giving the same priority of lien over the mortgage bondholders.    The statute of Virginia, (Acts 1876–77, p. 188, and Acts 1878–9, pp. 252, 253,) designates certain employes of transportation, mining, and manufacturing companies, who shall have a prior lien on the franchise, the gross earnings, and on all the real and personal property of such companies.    The title of the act is "An act to secure the payment of wages or salaries to certain employes of railroads, canal, steam-boat, and other corporations."    The amended act is as follows:

"An act to amend and re-enact the first and second sections of an act approved March 21, 1877, entitled 'An act to secure the payment of the wages and salaries to certain employes of railway, canal, steam-boat, and other transportation companies.'    Approved April 2, 1879.    (1) Be it enacted by the general assembly, that hereafter all conductors, brakesmen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, store-keepers, mechanics, or laborers, and all persons furnishing railroad iron, engines, cars, fuel, and all other supplies necessary for the operation of any railway, canal, or other transportation company, or any mining or manufacturing company, chartered under or by the laws of this state, and doing business within its limits, shall have a prior lien on the franchises, the gross earnings, and on all the real or personal property of the said company which is used in operating the same, to the extent of the money due them by said company for such wages or supplies; and no mortgage, deed of trust, sale, conveyance, or hypothecation hereafter executed of said property shall defeat or take precedence over said lien.    But it is expressly provided that the liens of the employes and officials aforesaid shall be prior to that of all other liens whatsoever, and shall

be the first discharged. (2) Any person entitled.to the benefit of the lien aforesaid shall forfeit the. same unless he shall file a memorandum with the clerk of the county or corporation court, under affidavit, according to his best knowledge and belief, stating the amount and justice of his claim, within six months after the same shall have fallen due; and the said clerk·shall forthwith record the said memorandum in the deed-book, and indorse the same by the name of the person filing the same, and also in the name of the corporation against which the claim is. And it is provided, also, that it shall in all cases be sufficient for the claimant to file the memorandum aforesaid with the clerk of the court wherein deeds may be recorded in the county or corporation wherein the chief officer of the corporation, against which the claim may be, is located."

The statute is plain and unambiguous as to what classes of employes shall have this priority of lien to secure their wages. The president of a company, designated in the statute, is not given this priority. .The office of president of the Shenandoah Iron Company is. created by its charter, and Mr. Milnes was elected to fill that office, and was salaried as president. To designate him as general manager does not change his official relation to the company, nor does it bring him within any of the designated classes in the statute to whom priority is given. If the stat- 'ute had intended to embrace presidents, vice-presidents, general super- intendents, general managers, and other like officials, it would doubtless have said so. The prominence of such officials in every company named in the statutes precludes the idea that their distinct existence and claims were overlooked and that they were intended to be embraced in some of the designated classes of employes. They seem to have been purposely omitted; doubtless for the reason that this class of officials are, generally, in a position to protect their interests, and secure their salaries; while the classes included in the statute are not so situated, and are not able to protect themselves against loss. The exception to this allowance must be sustained.

The eleventh exception is to the report of the master "that it was not necessary for the employes of the Shenandoah Iron Company, in order to secure a priority of lien over the mortgage bondholders, to comply with the statutory requirement which provides that liens must be filed in six months." While statutes of this kind have by the courts been construed liberally as to the persons embraced within their provisions, to the end that none may be excluded from their benefits who may have reasonably been contemplated by the legislature, yet the requirements of such stat- utes that the creditor shall perform certain acts in order to secure his lien and preference over anterior lien creditors, such as the holders of mort- gage bonds, have not been the subjects of liberal construction. The statute in this respect being absolute and peremptory as to the time a lien shall be recorded, leaves no room for the court to modify in any de- gree its provisions, by giving it a liberal construction.

In *Canal Co.* v. *Gordon*, 6 Wall. 561, Justice SWAYNE said: "The ju- risdiction of a court of equity invoked to enforce a statutory lien rests upon the statute and cannot extend beyond it."

In *Davis* v. *Alvord*, 94 U. S. 549, the court says:

"While the statute giving liens to mechanics and laborers for their work and labor is to be liberally construed, so as to afford the security intended, it cannot be too strongly impressed upon them that they must not only bring themselves by their notices, as was done in this case, clearly within the provisions of the statute, but they must be prepared, if the priority of their lien is disputed, to show a compliance with those provisions, and to fix with certainty the commencement and completion of their work."

See, also, on this subject of a strict compliance with the requirements of the statute, Phil. Mech. Liens, §§ 322, 322a, 323, where numerous authorities are cited. *Boston* v. *Railroad Co.*, 76 Va. 180.

The court cannot concur in the view advanced by the master and by counsel that any steps taken by the creditors to perfect their liens after the commencement of this suit would be in contempt of this court. Recording a lien is in no respect a legal proceeding in the nature of a suit; no more so than the recording of a judgment would be. The court therefore sustains the eleventh exception as to the legal question raised by it, and holds that the lien must be filed within the six months, as required by the statute, unless before the expiration of the six months there has been a decree to take an account of debts, in which case the limitation of the statute ceases to run from the date of such decree. In this case a decree of reference was entered on the 9th day of March, 1886, less than six months after the labor claims objected to by the eleventh exception became due. This decision is in accordance with the doctrine laid down in *Harvey* v. *Steptoe*, 17 Grat. 304, and the court, in arriving at it, is controlled by that case. So much of the exception as objects to the allowance to these claims the priority given them by the statute is overruled.

The thirteenth exception is to the claim of Sidney F. Tyler, receiver of the Shenandoah Valley Railroad Company, for necessary supplies for the Shenandoah Iron Company for the week ending September 12, 1885, amounting to $1,097.53. The court is unable to see on what principle the master gives this debt priority of lien over the mortgage bondholders. It is not included in the terms of the statute, and there was no necessity that it should be, as railroad companies, being common carriers, have a lien for freight on all materials carried by them. The Shenandoah Valley Railroad had a lien on the supplies carried for the iron company, which it could only lose by parting with the possession of the supplies before payment of its freights. This it chose to do, and it must be classed with the general creditors. The exception must be sustained.

This disposes of all the important questions raised by the exceptions filed to the master's report. A decree will be entered in accordance with the views of the court as expressed in this opinion.