SNIVELY v. LOOMIS COAL CO. (PHOENIX POWDER MANUF'G CO., Intervener).

(Circuit Court, E. D. Missouri, N. D. June 15, 1895.)

No. 169.

EQUITY—PRIVATE CORPORATIONS—CLAIMS FOR SUPPLIES.

> Claims for labor and materials or supplies furnished to a merely private corporation, such as a mining company, are not entitled to priority over the mortgage bonds of such corporation, or over a vendor's lien on its property.

This was a suit by Ezra V. Snively against the Loomis Coal Company to foreclose a vendor's lien. The Phoenix Powder Manufacturing Company intervened, seeking payment for certain supplies furnished.

Mr. Huston, for complainant.

Mr. Harkless, for respondent.

Mr. Kinealy, for intervener.

Rombauer & Rombauer, for receiver.

ADAMS, District Judge. The Loomis Coal Company, defendant herein, was a manufacturing and business corporation engaged in the business of mining coal and buying and selling merchandise. Suit was instituted by Snively against the defendant to foreclose a vendor's lien existing in his favor upon certain real estate of the defendant. By appropriate intervention, the Merchants' Bank of St. Joseph and the First National Bank of Hannibal became parties to the suit, and, by the interlocutory decree heretofore entered in the case, said banks are found and decreed to have mortgage liens against the real estate and property of the defendant, given to secure the payment of large sums of money due from the defendant to them, respectively, and said Snively was found and decreed to have a valid vendor's lien also. At the institution of the suit, the court, at the instance of the plaintiff, appointed a receiver to take charge of the property pending the litigation; and for special reasons, satisfactory to the court, the receiver was directed to continue the operation of defendant's mines, and also the transaction of its mercantile business. Within three months prior to the appointment of the receiver, the intervener here sold powder to defendant, which was placed in its store as part of its stock of merchandise, for sale to the public and for use by it, as occasion might require, in its mining operations. About one-half of the purchase price of this powder was paid by defendant before the receiver was appointed, and the balance, amounting to $448.50, remained at that time unpaid. The intervener, in its petition, claims that, under the general doctrine recognized in suits for the foreclosure of railroad mortgages, the court ought to order said balance paid to it out of funds in the hands of the receiver, as a claim, in equity, superior to the mortgage and vendor's liens. The special master to whom this petition was referred reported adversely to the claim so made, and the question is now before the court on exceptions to the master's report.

The equitable doctrine invoked in this case rests upon the assump-

tion that the income has been diverted from its primary use to meet current expenses, and been appropriated by the debtor either to pay interest on the mortgage indebtedness, or to improve the mortgage security. Fosdick v. Schall, 99 U. S. 235; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Wood v. Safe-Deposit Co., 128 U. S. 416, 9 Sup. Ct. 131. There is no evidence before the court in this case either of current earnings prior to the appointment of the receiver, or of any diversion of such earnings for the benefit of the secured creditors. If, therefore, the doctrine invoked can be made applicable to a manufacturing and business company like the defendant, no case has been made by the proof. The court cannot assume the existence of facts necessary to create the equity. Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. 436. But, as there are several other intervening petitions of like character to that under consideration now pending in this court, I have examined the case in hand with a view of determining whether the equitable doctrine invoked ought to apply to a business company situated like the defendant. Hitherto, as I understand, it has not been applied by the supreme court in any case except that of a railroad. A railroad, being a quasi public corporation, is charged with the performance of duties at the demand of the public. To cease operation, after having once opened up a country, encouraged settlement along its route, and accustomed the public to its facilities of transportation, would be attended with great inconvenience, hardship, and injury to the public. For these reasons, a railroad must be constantly operated, even pending foreclosure proceedings. To do so, laborers and other persons who furnish material and supplies must have an assurance that their demands will be paid. The value of railroad securities, too, is largely dependent upon keeping a railroad a "going concern." It is in consideration of these necessities and the peculiar relations of a railroad company to the public, as well as a consideration of the interests of lien creditors themselves, that the courts have lent their aid to operate a railroad pending litigation. As a necessary prerequisite to these ends, the courts, acting upon the assumption above named, have recognized the claims of laborers and material men, accrued a short time before the appointment of receivers, as entitled to a preference in equity over the mortgage liens. In the case of Wood v. Safe-Deposit Co., supra, the supreme court, while not passing on the point in question, recognizes a broad distinction between a railroad case and that of a purely private corporation. In the case of Seventh Nat. Bank of Philadelphia v. Shenandoah Iron Co., 35 Fed. 436, it is held that an incorporated iron manufacturing company does not come within the equity principles that give the employés of a railroad corporation a prior lien upon its current earnings for the payment of their wages. In the case of Fidelity Ins. & Safe-Deposit Co. v. Shenandoah Iron Co., 42 Fed. 372, it is held that, by the principles of equity, claims for materials, supplies, and labor furnished to a mining and manufacturing company are not entitled to priority over the mortgage bonds thereof. To the same general effect is the case of Farmers' Loan & Trust Co. v. Grape Creek Coal Co., 50 Fed. 481.

The reasons, therefore, why a railroad company or other quasi public corporation should be constantly kept in operation as a going concern do not apply to a private corporation like the Loomis Coal Company. The public has no special interest in such a corporation. It is therefore immaterial to it whether it is kept in operation or whether it is closed down during the foreclosure proceedings. In cases of this kind it seems to me that the contracts of the parties ought not to be interfered with by the courts. In this case, the Loomis Coal Company entered into a contract with Snively and the two banks, whereby it agreed to pay certain money to them; and, by the execution of the mortgages referred to, it agreed that its property should be bound with the first lien for the payment of said money. I fail to see any equity in depriving them of such liens at the instance of the intervener in this case. If the court can decree that the intervener's simple contract claim for goods sold within three months prior to the appointment of the receiver should take precedence over the above-mentioned lienor's claims, it is not apparent where the limit of such action could be. The entire mortgage property may be consumed in the payment of simple contract debts, which the creditors, when selling the goods, never expected, and which the lien creditors, on taking the solemn obligation of the coal company, never contemplated as possible. I am not willing to extend the reasonable equitable doctrine applicable to railroads and other quasi public corporations to such corporations as the defendant in this case. I see no reason for making any special exception in favor of the intervener, for the small amount of powder which remained on hand at the time of the appointment of the receiver, and which, the evidence shows, the receiver has used or disposed of. In fact, no relief of this kind can be granted on the intervening petition as filed.

Inasmuch as each and all of the exceptions taken to the master's report challenge his final conclusion only, there is no occasion to refer to any one of them separately. The exceptions are overruled.