## PROSECUTION FOR BRIBERY.

Common Pleas Court of Franklin County.

THE STATE OF OHIO V. RODNEY J. DIEGLE.

Decided, June 28, 1911.

*Criminal Law—Entrapment as a Defense—Aiding and Abetting in the Solicitation and Acceptance of a Bribe—Analogy Between Bribery and Offenses Against the Postal Liquor Laws—Testimony Warranting the Belief that the Persons Involved Were Probably Inclined to Accept Money.*

A showing that the prosecution of one accused of bribery was an entrapment to which the state was a party does not constitute a defense.

*T. S. Hogan*, Attorney-General and *Edward C. Turner*, Prosecuting Attorney, for the state.

*C. J. Mattern* and *Belcher & Connor*, contra.

KINKEAD, J.                     .

On motion to direct verdict for defendant.

I will state at some length the conclusions of the court on the motion, which is submitted by counsel for the defendant. to take this case from the jury.

I might just announce my conclusions, but. I always have the feeling that litigants are entitled to know the reasons for conclusions reached by the court, and especially when the matter means so much to parties; and when a court gives its reasons and if they appeal to any one as cogent, or at least if they give evidence of careful, conscientious consideration, the parties are better satisfied when the decision is against them.

The motion is placed upon the ground:

First. That the prosecution in this case is an entrapment to which the government and state is a party, and for that reason is not entitled to prosecute the defendants.          .          .

Second. That there is a fatal variance between the proof and testimony offered by the state of Ohio and a material state-

---

*Affirmed by Circuit Court October 17, 1911, 14 C.C.(N.S), ——.

ment in the indictment in this, to-wit, that the indictment alleges that the defendant aided and abetted one, L. R. Andrews in soliciting and accepting a bribe from one Frank S. Harrison, when the proof shows that, if any solicitation was made or any acceptance of a bribe was taken, it was one from one Frank H. Smiley.

Third.    That there is a total lack of evidence and a total failure of evidence in this: that the said Rodney Diegle was an aider and abetter in this particular, that he conveyed certain messages and arranged certain meetings between Harrison and Andrews, and upon that point the defense claims that there is a total failure of evidence and for that reason as well this court should direct a verdict.

The question which deserves the most serious consideration is the claim of entrapment into crime.  It clearly appears that the W. J. Burns detective agency sent three operatives here whose sole mission was to entrap the members of the Legislature into the acceptance of bribes.  The evidence so far fails to disclose precisely who was back of the movement, except that the secretary of the Manufacturers Association furnished the detectives with the money which it is claimed was given to the various members.  It appears also that the prosecuting attorney was cognizant of the operations of the detectives, reports of which were made to this officer for purposes of prosecution.

The detectives engaged in this transaction are entitled by law to immunity, as I understand it.  I have not had time to read the 101st Ohio Laws, but the prosecutor makes the statement that that is by reason of their having testified before the grand jury, and that under that law they are entitled to immunity, and the witness has stated, I believe, in substance that he has had immunity.

There is no evidence directly tending to show that the several members involved in the entrapment scheme had been guilty of soliciting and accepting other bribes to influence their official action.   There is some evidence tending to show that in matters of ''this kind''—that is, acceptance of money—there were certain persons who stood together.

Senator Andrews, it is alleged, stated in this interview with the detectives that ''There are about three of us over there, you

know—this man you saw me with—about three Republicans on
my side that in these matters we stay together.  *   *   *   The
other people are Democrats.   We are the Republicans, but there
are three of us stick together in matters of this kind.   *   *   *
These friends of mine ought to be taken care of a little.   *   *
*   There is only three of us that stay together there on the
Republican side.''

This appears to be significant language, in bringing it into
this statement, because it is necessary for the court to consider
it in determining the questions of law.

Of course the court expresses no opinion, has no opinion, on
the question of facts, which are finally submitted to the jury.

This, it seems, tends strongly to show a purpose to do just
what appears to have been done in this case.

Referring to his friends who he said stayed with him in these
matters, Mr. Harrison stated to Andrews that he would give
them a little piece of money if Andrews thought they ought to
have some, but Harrison cautioned him not to let the balance
of the bunch down there know it.   Andrews replied, ''Sure not;
us three;  that is all.''

There is no evidence, as I remember, showing who were on the
committee.   There were seven, according to some testimony in
evidence, and I think it comes from this interview with the de-
tectives, and Diegle stated that four would be sufficient to get
the bill out.

The dictigraph testimony runs as follows.:

''Mr. Harrison:   I suppose you know all the fellows on that
committee?
''Diegle:   Absolutely.
''Mr. Harrison:   How much will it cost?
''Diegle:   Cost two hundred dollars apiece.''

Of course ''Diegle'' means the ''a voice'' as it is written in
the evidence, but for the purpose of this opinion I use the word
''Diegle.''

''Mr. Harrison:   For each of the four; that is eight hun-
dred dollars.; does that include their vote on the bill when it
comes into the Senate?
''Diegle:   I am afraid not.''

Diegle seems here to be speaking on behalf of the Senators.

"MR. HARRISON: Want two hunderd dollars apiece to get it out of that committee?

"DIEGLE: Yes, sir.

"MR. HARRISON: Can I depend on them?

"DIEGLE: You can depend on anything I tell you."

Later on Cetone, Huffman and Andrews ratified and confirmed what Diegle said, as appears from the testimony, and the claim is made on behalf of the state, while the detectives first approached Diegle and placed temptation before him, there seems to be sufficient to warrant this case in going to the jury on the question of his being a spokesman or agent for the Senators.. The statement of Andrews that the three Republican Senators stood together on matters of this kind, and the inference that Diegle acted for the several Senators concerned, tends to support the idea that these men had a common understanding "*on matters of this kind.*"

While there is no evidence which shows that these persons had been violating the law, still there is enough in the record to warrant the suspicion or belief or probable conclusion on the part of persons investigating irregularities in the Legislature that the persons involved were probably inclined to accept money.

That is mentioned as a question of fact to which the court later on will apply the analogies of other decisions.

There appears to be sufficient evidence touching not only the question of aiding and abetting, but also on the question of the liability of the defendant, in view of the law as to entrapment, to justify the court in submitting the question to the jury under appropriate instructions.

On the question of whether Diegle was an agent for Harrison or for the Senators, it clearly appears to be the duty of the court to submit the question to the jury, because different minds might come to different conclusions.

On the question of the liability of the defendant and others involved, in view of the admitted entrapment by the detective acting evidently for the Manufacturers Association, is not so easily solved. There may be persons, some upon whom the responsibility does not rest, who may consider this an easy question, or easy of solution.

The learned Bishop, however, in his treatise on criminal law observes that "The cases of greatest difficulty are those in which one suspecting crime in another, lays a plan to entrap him." *Bishop's Cr. Law*, 5th Ed. Section 262.

The humanitarian expressions of some learned jurists to the effect that the conduct of detectives who, in their zeal or under a sense of duty, suggest the commission of a crime and instigate others to take part in its commission in order to arrest them, is not only reprehensible, but criminal, and ought to be rebu' rather than to be encouraged by the courts (*Saunders* v. *People,* 28 Mich., 218) can not but strike a sympathetic chord in the better natures of most men.

And this rule of consecience has been uniformly applied in, the class of cases where the public duty is imposed by criminal statute primarily in the interest of private right, and secondarily to enforce the public duty as a deterrent to crime.

A study of all the decisions on the subject of entrapment into crime will show the necessity of a clear and proper distinguishment between the different classes of rights and duties involved. In larcenies and burglaries the primary right which is injured is private and personal to the individual, the criminal penalty being imposed not alone for the sake of the personal right, but also for the protection of others similarly situated.

The primary right, the public duty and the right to enforce the penalty of the statute in such cases, are incomparable with those involved in a case of corruption of a public official, or of the violation of laws such as liquor laws, lottery laws, postal laws, and the like.

It is a conceded doctrine in the philosophy of law that legislation involves pure ethics; that the exercise of the legislative duty is concededly of a purer type than even the judicial act. Though that is the sanctioned doctrine among the philosophers of the law, there are many of us who can not acquiesce in its full statement.

But as the science of law places the legislative duty on such a high plane, it follows that the duty imposed upon the legislator can not be consider obligatory primarily for individual benefit, as in property rights, but is solely and entirely for the benefit

of the state, and the whole people. There is but a very limited class of public officials who owe duties of a private and proprietary character. It is sufficient to state in this connection that the duty of the legislator is never private or proprietary, but always public for the benefit of all the people.

No persons, or class of persons, nor any public official can do any act towards compromising the public duty, or in any wise estopping the enforcement of the penalty of the law for the violation of such duty.

There can not be anything stronger than the unreported decision of *Fox* v. *State*, where the entrapment was at the direct instance and conduct of the prosecuting attorney, and the court by refusing to entertain that case, where the error complained of was a charge that the entrapment was a defense, is a direct authority which this court is bound to follow.

I confidently assert that the rules of law which have been announced by the various judicial pronouncements which constitutes entrapment into crime a defense to its prosecution, are limited to that class where individual right is primarily involved, and the penalty of the law imposed as a deterrent to crime.

I can not take time to enumerate or discuss the cases, but I believe I have read and carefully studied most of them.

I advert to another class of cases which involve violation of certain laws which have been enacted for the public welfare in a different way from that other class enacted to protect primarily private or individual right. True, all laws are for the public good. But the liquor laws, and the postal laws of the United States are laws passed in the exercise of the police power.

Although a well reasoned early decision of *United States* v. *Whittier*, 5 Dillon, 35, by the learned Judge Dillon, refused to extend the postal laws to the case of a decoy letter sent through the mails, because the court considered that the terms of the statutes, literally construed, did not apply to a fictitious letter written by a fictitious person to entrap the person suspected of violating the laws, we are now safe in concluding that the decisions of the Federal Supreme Court uniformly sanction this means of detecting crime, the entrapment not being a defense. *United States* v. *Moore*, 19 Fed., 39; *United States* v.

*Wright*, 38 Fed., 106; *Price* v. *United States*, 165 U. S., 311; *Scott* v. *United States*, 172 U. S., 343; *Grim* v. *United States*, 156 U. S., 604; and 10 Federal Reporter, 97, where there is a most excellent discussion in the note.

The reasons for these decisions appear to have been that the post office inspector, or detective, as he is called, in setting the trap was to ascertain whether the persons accused were engaged in an unlawful business, or in the violation of the laws. In other words, the suspicion being that the accused was engaged in a business offensive to good morals, sought information directly from him, and the responding thereto violated the United States mail laws.

The analogies between these Federal decisions in this class of cases and cases of bribery are strong.

I think that there has been a sufficient showing by the evidence so far introduced to warrant the belief that there were irregularities in the Legislature so that the principle of the United States decisions can be applied here.

If there was a belief that certain members of the Legislature were violating the bribery law, then may it not be said with equal reason that means and methods may be adopted to catch those who may be willing to accept bribes, as sanctioned by the federal decisions.

Conceding for the purpose of demonstrating the position of the court as to the law question involved, that either Bailey or Barry first mentioned money to Diegle, it might be contended by the state, if the case be sent to the jury, that from the conversations between Diegle and Harrison, that Diegle represented the four senators, and might warrant the belief, or the suspicion, that they would take money by way of bribe; and that this belief existed in the minds of the detectives and those for whom they were acting before the entrapment scheme was completely carried out.

The reasoning and conclusion in *People* v. *Liphardt*, 105 Michigan, 80, being also a bribery case, is applicable here. The suggestion of willingness to take money in this case was first made by the member of the Board of Education. This was followed by the entrapment scheme, and it was held not to be a defense.

The doctrine announced was that it was only when the criminality of the act is shown to be absent by the fact of the inducement that such proof justifies an acquittal. The court in thus expressing itself had in mind and referring to crimes against property, and it especially stated that there was no opportunity for the claim in the case of bribery that the accused was trapped into it. This decision is not inconsistent with the earlier cases in that state, cited by counsel.

In *Commonwealth* v. *Wasson,* 42 Pennsylvania Superior Court Reports, page 38, but I might say before quoting that that court is entitled to as much consideration as the Supreme Court of that state, because it is a commission, it is a sort of a Supreme Court commission, and this decision, perhaps, is the strongest one, or one that contains more wisdom than any that I have found. It was held in that case that—

"Councilmen of a city who have entered into a conspiracy to accept bribes for passing certain ordinances, can not defend against the charge of conspiracy on the ground that they had been lured into the act by detectives proposing to them a scheme which the detectives had no intention or ability to carry out."

The court considered that there was a very clear distinction, founded on principle as well as upon authority, between measures to entrap a person into a crime in order, by making him a criminal, to aid the instigator in the accomplishment of some corrupt private purpose of his own, and artifice used to detect persons suspected of being engaged in criminal practices, particularly if such criminal practices vitally affect the public welfare rather than individuals.

This is the pivotal point in this case. There was nothing but a suspicion of belief of the existence of graft. But the members of the Senate and the detectivees, entered into, as the testimony tends to show, a conspiracy, or a plan, to carry out a project which the detectives had no intention of carrying out.

But notwithstanding the intent and purpose of the detectives, the fact nevertheless remains that, as expressed in 105th Michigan case, the criminality of the receiver of the bribe was present. In soliciting or receiving a bribe there is one intent and purpose and one crime, while in giving a bribe or alleged bribe there is another and distinct crime.

I read in that connection from the excellent note in the 10th Federal Reporter, page 99:

"Whether, when the offense is the special product of the trap, the defendant can be convicted, depends upon the exclusiveness of the causal relationship between the offense and the trap. When the defendant was the passive tool of the entrapping party then there should be an acquittal. On the other hand, th defendant ought not to escape conviction in any case (with the exceptions above mentioned, and those are all property cases) in which he knowingly committed the offense."

There is one point, however, in the philosophy of this transaction, as to which it is difficult to satisfy my mind.

In giving and accepting a bribe it seems that to come within the statute the giving and receiving should be done with the mutual intent and purpose of obtaining the official action of the officer whose action is supposed to be controlled. The idea of no intent and purpose to have official action is abhorrent, and still the willingness to accept and receive a bribe with intent and purpose of taking official action favorable to the supposed bribe giver is perhaps more abhorrent.

And the true official called upon to decide the point will place the public welfare above the humiliation of the public official who takes the supposed bribe, and finds out too late that it was but a fake.

A judge is merely applying and enforcing the law as he finds it, and not giving expression to his own will or personal opinion; and it clearly appears from the authorities that a defendant ought not to escape conviction in any case, excepting as to crimes against property rights, in which he knowingly committed the offense.

I may say that I am perhaps influenced, and I feel that I can not possibly escape the conclusion reached in this case, by reason of the action of the Supreme Court taken in the case of *Fox* v. *State of Ohio,* which was an error proceeding to the Circuit Court of Meigs County, Ohio. It appears from the facts in that case that the prosecuting attorney, having indicted the defendant on another charge, and feeling that he was unable to establish and unable to convict him on that charge, deliberately planned to entrap him into offering him a bribe; **and the** tran.

action was carried out much in the same manner as this one was, and it was done by the officer of the law; and the court, in trying the case below, was requested to charge in so many words that that entrapment was a defense, and the Supreme Court said that they would not even hear the case.

It seems remarkable that a question that has never been decided squarely, perhaps, by any court on that precise state of facts was not heard, and we have not had an expression to aid the trial judges, who have to plow the ground originally.

But I feel that, in view of the refusal of the Supreme Court in that case, that if I were to take any other action than the one I am about to take it would not be within the law.

On the question of variance my judgment is that the statute covers the case, and I will be content with merely stating my conclusions, that the motion is not well taken.

And, for the reasons stated, the motion made by the defendant for a direction of a verdict is overruled.

---

### AS TO UNDUE INFLUENCE OVER A TESTATOR.