# THE GREGG COMPANY, LTD., Complainant,

## *v.*

# UTUADO SUGAR COMPANY, Dft.

### IN RE CLAIM OF IGLESIAS.

San Juan, Equity, No. 898.

#### REFACCION DEBT OF RECEIVER.

**Receivership——Advances to Receiver—Compensation to Lender.**

1. Where a receiver of a central borrows money for the use of which he is to pay the lender a certain rate of interest, and in addition thereto agrees to pay him a stipulated rate for marketing the sugar, although the agreed interest with the added compensation exceeds the legal rate of interest, the contract is not usurious

**Receivership——Power of Receiver—Contracts.**

2. Where a court authorizes a receiver to borrow money and to issue his certificate therefor, the receiver has no power to give any other kind of security for the loan, and if he enters into a contract different from the one authorized, he and the lender act at their peril, as such contract will not be recognized by the court.

**Receivership—Administration—Creditors.**

3. A receivership is for the benefit of all creditors, and the court will not allow a property to be operated for the benefit of a particular creditor, when the creditor as a whole will be prejudiced thereby.

**Receivership—Authorized Contract—Receivers' Certificates.**

4. Where a court authorizes a receiver to borrow money and to issue his certificate therefor, and the receiver enters into a refac-

NOTE.—For a full treatment of the question of priority of claims against property in hands of receiver over recorded liens, see notes in 2 L.R.A. (N.S.) 1013, and 41 L.R.A. (N.S.) 695.

Gregg Co. v. Utuado Sugar Co.

cion contract, if the estate is benefited to the extent contemplated by the authorized contract, the court will in equity consider that contract as carried out, as the issuance of the certificate is not essential, and is a mere evidence of debt.

Receivership—Administration Expenses—Liens.

5. Money borrowed by a receiver pursuant to a court order will be considered an administration expense, and when the money is borrowed for the preservation of the property, the court can make the debt a lien on the corpus of the estate if the income from the property is insufficient.

Receivership—Receivers' Certificates.

6. The court has power to issue receivers' certificates and to declare them a lien on whatever property is in its hands.

Receivership—Preservation of the Property—Operation of the Business.

7. Money used for the preservation of the property has a higher rank than money used for the operation of the business, and in a proper case the court will make the former a lien on the corpus even over mortgages.

Opinion filed Jan. 21, 1916.

Statement of Facts.

The facts controlling this case may be briefly stated. R. A. Macfie, receiver of the Utuado Sugar Company, in this cause during the difficult times arising in the year 1913, found it necessary to borrow money to operate the receivership property. Upon application to the court, an order was made on June 30, 1913, empowering him as follows:

"On this day the receiver, having presented his petition representing the necessity of borrowing money for the purpose of carrying on the administration of the property of the Utuado Sugar Company under the administration of this court, and particularly in order to provide funds for the cultivation of crops

which are to be ground at the factory of said company, as well as for the expenses incidental to the operation of the plant and the manufacture of sugar therein, by reason of which he desires to borrow a sum not to exceed $50,000.

"And it appearing to the court that in order to enable the receiver to borrow said money it is necessary to issue receiver's certificates which would be first and prior lien upon all of the sugars which will correspond to the Utuado Sugar Company from the next ensuing crop of 1913–1914, and further that as an inducement and incident to the making of such loan it is necessary to authorize the receiver to make such contract as in his judgment shall be proper, for the best interests of the estate, respecting the sale of sugars to be manufactured by the receiver; it is now hereby ordered:

"The receiver is hereby authorized to borrow a sum not to exceed $50,000, for the purpose of the administration of the estate under his charge, and particularly for the cultivation of crops and the operation of the plant, and he is authorized to issue receiver's certificates therefor to the person or persons advancing such money, such certificates to bear the lowest rate of interest obtainable by the receiver and to be payable at such times and in such amounts as he may deem best and that he may be able to agree with the person or persons making such loan.

"Such certificates so issued shall be a first and prior lien upon all of the sugar which may become the property of the Utuado Sugar Company as the result of grinding canes during the next ensuing crop of 1913–14.

"It is further ordered that the receiver may make such contract or contracts as he may deem to the best interests of the estate under his charge, for the selling of sugars to be manufac-

Gregg Co. v. Utuado Sugar Co.

tured during such crop, and such contracts shall be made on the best terms which the said receiver may be able to obtain.

"It is further ordered that such certificates may be issued at such times and in such amounts as the receiver may find advisable or necessary, and they shall be sufficiently authenticated by the signature of the said receiver and a certified copy of this order.

"Nothing contained in this order shall be held to determine the rights which Carlos Armstrong and Sons may have under a certain contract for the sale of sugar of the crop of 1912–1913, such alleged rights and issues to be hereinafter determined."

In pursuance thereof the receiver borrowed $30,000 from petitioner Iglesias. It is not shown that a receiver's certificate as such was issued. The receiver, on Sept. 5, 1913, made a contract in the nature of a "prestamo refaccionario," which was registered in the proper registry of deeds at Arecibo. This contract provided for interest at 9 per cent and a first lien over any sugar belonging to the Utuado Sugar Company. The contract also provided that Iglesias should be the factor or broker for selling the sugar and receive as commission 10 cents for each quintal of sugar produced by the central, it being further stipulated that, while the receiver might sell the sugar in some other way, Iglesias should nevertheless receive this compensation. The balance due upon the contract is claimed to be $15,371.98 with interest from May 7, 1914.

The lien claimed being opposed, it was referred to the master who filed a report on December 7, 1914, allowing the claim as that of a common creditor and denying all lien therefor. Exceptions were duly filed and the matter has now been argued and submitted to the court for final determination.

*Mr. Jorge Dominguez* for Iglesias.

*Mr. Chas. Hartzell* for certain creditors.

HAMILTON, Judge, delivered the following opinion:

1. While the master does not report specifically upon the point, the argument raises the question whether the provision for payment to Iglesias of $3 a bag under the contract of September 5, 1913, was usury. It is however difficult to see how this can constitute usury. It is a compensation provided in the contract for the handling and sale of the sugar in question. The compensation may be high, but the circumstances seem to show that it was necessary to pay high in order for Utuado to have the services rendered at all. A provision that the lender shall handle the article to be produced by the advances is not uncommon. It is usual in Porto Rico, and it is the usual practice in the cotton trade of the southern states. It serves the double purpose of protecting the lender in that he will have the handling of the crop which his advances have made, and it aids the borrower in that he secures at a fixed price a seller or factor equally interested with himself in securing the market price of the commodity in question. It may well be that the provision for payment of this compensation to Iglesias for sugar which he did not actually handle would be improper. Whether this was so or not will be later considered.

2. The decree of court of June 30, 1913, provided that the receiver should issue certificates for the loan. For some reason the receiver did not do so and instead of that entered into a contract of refaccion, "prestamo refaccionario," apparently in-

tended to have the form and rights conferred by the law of Porto Rico Civil Code, § 1824, Compilation 1911, §§ 52–72.

The master found that the parties were bound by and limited to the contract which they undertook to make, that is to say, that Iglesias replied upon the crop of 1913–14, and to the extent that this crop was not made, he is not entitled to claim against the receivership assets. It is doubtless true that two parties not under disability may enter into any contract provided for by law. Mr. Macfie and Mr. Iglesias could have made a contract of refaccion as individuals. But Mr. Macfie and Mr. Iglesias were under disability. Mr. Macfie was receiver of this court, and had no power whatever except what was conferred by the order of this court of June 30, 1913, and on the other hand Mr. Iglesias must be held to know, and in fact did know, that he was contracting not with an individual, but with such receiver. The contract itself recites that they were acting under the order of this court of June 30th, which in part is set out in so many words in the contract.

From one point of view it might seem that, as the contract was placed of record, the public was put on notice, and that the court and all concerned were bound by the contract to the extent that it was actually carried into effect, that is to say, to the extent that the loan of $30,000 was actually made and reimbursement for about half the amount actually received. This view, however, is incorrect. The parties could, so far as the court was concerned, make no other contract than the one they were authorized to make. If they acted otherwise, they acted at their own peril, and not at the peril of the parties represented by the court. The court was to Iglesias and the receiver no third party, and is not bound by anything they chose to do and put of record.

Gregg Co. v. Utuado Sugar Co.

It results that there was, so far as this case is concerned, no refaccion contract between the receiver on the one side and Iglesias on the other, and whatever was received or paid must be adjusted upon other principles. A further consequence is that the balance due, if there was any, was not carried forward to another year, as is contemplated by the local statute. While the order may be said to contemplate a quasi-refaccion contract, it is binding upon the assets of this receivership only to the extent provided for in the order creating it. This by express terms said that the lien should go upon the proceeds of this one crop. It might well be that all the parties, including the court, thought that the debt would be paid out of the proceeds of this one crop, and thought it unnecessary to carry the lien over to another crop. However this may be, the lien was not carried forward by the order, and cannot now be carried forward by any proceeding *ex post facto.*

3. It is urged that whatever accounting is had should be brought down to date, and that there should be applied to this contract what may have been made under the lease of the property after the receiver ceased operating it. To this the court cannot assent. The court, for good reasons and for the preservation of the property in April, 1914, ordered the mill to stop grinding at a loss. The object of the loan was the administration of the property, and neither Mr. Iglesias nor anyone else has a right to have the mill run at a loss to the estate. That would be eating up the principal of the estate to pay a debt which was contracted to be paid out of the crop when ground. Whether it gives Mr. Iglesias a right to claim from the court the part of his debt which has not been paid is a question to be considered later. It certainly does not give him a right to have the estate mulcted in

VIII. Porto Rico—27.

that particular way in order that he might be paid.  There can be no doubt that the court has the power and also the duty to see to the administration of the property for the creditors as a whole, and not operate it for the benefit of one creditor in particular, even if that creditor is one made such by the receiver acting under an order of court.  That would cease to be administration of the property and become exploitation.

4.  The master concluded and reported that the balance unpaid was a charge against the estate, but having no higher rank than any creditor without a lien.  His theory was that Iglesias had contracted to lend money payable out of a certain fund, that is to say, the proceeds of a certain year's crop, and, that fund being insufficient, the debt ceases to be a receivership charge.  It is perfectly true that the parties made a contract which may bear that construction.  Nevertheless it is also true that it was a loan authorized by the court for administration purposes and for which the court provided that a receiver's certificate should issue. It is difficult to resist the conclusion that if the contract actually made was unauthorized, as held above, the contract which was expressly authorized should in equity be held to have been carried out.  The receiver actually received the money in question, and it would be inequitable to say that because the security authorized was not given, therefore the security which was authorized is not to be applied to the debt.  In point of fact, the issue of the certificate was not, and is not, essential.  The paper is mere evidence of debt, worthless unless authorized by the court, and if the debt is authorized by the court it is evidenced by the decree and the receipt of the money under the decree, whether a certificate is issued or not.  It is doubtless true that if this money was not applied to the purposes contemplated by the de-

cree, there would be a liability on the part of the receiver and his sureties to reimburse the receivership estate. This, however, would not be a concern of the lender. When he hands the money over to the receiver under the order of court, he is not required to go further and see to its application. If he participates in any waste or misuse of the fund, that would be a different matter; but there is no allegation and no proof of anything of the kind. He is, however, chargeable with notice that much of the fund went not for preservation, but for crop purposes.

5. Not only did the crop fail which was supposed to be a sufficient security for the loan, but there has resulted a complete reorganization of the receivership. The question arises, Is there to be any difference in the rank of the claim of Iglesias and that of other administration claims? It seems to result from the above considerations that the Iglesias claim, when properly stated, is an administration debt, but it also seems to follow that it was primarily a crop debt and was intended by the court and all parties to be paid out of the crop of 1913–14. The court had a right to borrow money for the preservation of the property, and could make such a debt a lien on the corpus of the estate if the income was insufficient. It may be a question whether the court could create a lien on the corpus to secure a loan to make a crop or run any other business. But it did not undertake to do so. The loan authorized is, it is true, said to be for administration purposes, but for administration in the making of a crop. The order says this quite plainly and the parties acted on this. The lien fixed and declared was only on the ensuing crop, and not on the corpus of the property.

6. It does not seem necessary to cite authorities to sustain the above propositions. It is urged that a receivership of a sugar

Gregg Co. v. Utuado Sugar Co.

central is different from that of a railroad. In the case of Atlantic Trust Co. v. Woodbridge Canal & Irrig. Co. 79 Fed. 39, it was held that the law allowing receiver's certificates issued to operate a road as liens on the railroad is applicable to water companies. The court held that both were public uses. On the other hand, coal companies were held in Snively v. Loomis Coal Co. 69 Fed. 204, to be governed by different principles. The distinction is emphasized by Mr. Justice Gresham in Farmers' Loan & T. Co. v. Grape Creek Coal Co. 16 L.R.A. 603, 50 Fed. R. 481. In Wood v. Guarantee Trust & S. D. Co. 128 U. S. 421, 32 L. ed. 473, 9 Sup. Ct. Rep. 131, the supreme court said that the doctrine of Fosdick v. Schall, 99 U. S. 235, 25 L. ed. 339 has never been applied in any case except that of a railroad. The Supreme Court, however, did not undertake to decide the question and merely pointed it out. The point has not been decided by the Supreme Court except in connection with railroad cases. The right was denied by Circuit Judge Caldwell in regard to an insolvent private corporation. This distinction is recognized in standard works upon receivers. Thus it is stated by Alderson that the power to issue receiver's certificates should not be extended beyond quasi-public corporations. Alderson, Receivers, pp. 453, 479. High gives it as supported by the overwhelming weight of authority that in the case of a purely private corporation the court will not, against the objection of a majority of the bondholders, issue receiver's certificates and make them a prior lien on the property for the purpose of securing funds for the operation and management of the business, the power of the court being limited strictly to the necessary care and preservation of the property during the receivership. High, Receivers, p. 377, ¶ 312-B, p. 564, ¶ 398-C. The courts of Porto Rico have

Gregg Co. v. Utuado Sugar Co.

not, at least until recently, recognized the distinction between law and equity, but on August 1, 1914, in the case of Abarca v. Central Vannina, it was decided in the local supreme court that a lower court did not have the power to issue receiver's certificates in the case of a sugar central. A number of the cases above discussed are cited in the opinion.

In this Federal jurisdiction the use of receiver's certificates for money to preserve the estate is well established and will not now be disturbed, especially in a case where the order has already been made and the money loaned upon the faith of the order of court. See opinions of this court in the case of Welch & Co. v. Central San Cristobal, 6 Porto Rico Fed. Rep. 310, and Berwind-White Coal Min. Co. v. Borinquen Sugar Co. 6 Porto Rico Fed. Rep. 258.

7. The power to issue such certificates carries with it the power to declare their lien on whatever is in the hands of the court. In declaring above that the loan is to be considered as an administration debt, the court is not to be understood as declaring at the same time that it is one which takes priority of the mortgage debt. The order of June 30, 1913, expressly limits the contract which it authorized to the crop to be produced. So far as relates to the income derived from the property during the crop year in question, the debt was a valid one and should be paid out of those proceeds, if there were, or, but for the interference of the court, would have been, any proceeds after paying expenses of preservation of the property.

It is not to be understood, however, that the debt authorized by the order in question is to be considered a charge upon the corpus of the property. Being expressly payable from the crop proceeds, the court will protect it out of what were or should

Gregg Co. v. Utuado Sugar Co.

have been crop proceeds, although for good reasons it found it best to stop the grinding of sugar at a certain time. This protection is not intended to go further than the proceeds of the crops coming into the hands of the court. There is a distinction between money used for the preservation of the property and money used for the operation of the business. The former has a higher rank and in a proper case will be given a lien on the corpus even above mortgages, inasmuch as it renders a quasi-salvage service for the benefit of those encumbrances themselves. The court does not know how much, if any, of this loan was used for that purpose. So much, on the other hand, as was used for the operation of the business, in the hopes of making a profit, is not within the same rule. It may well be that, if wasted, the parties concerned may have recourse against the receiver on his bond; but they cannot have recourse against the corpus of the property except to the extent the money was used for the purposes of conservation.

This opinion is not to be considered as a declaration of what can or should be contained in any future order authorizing a receiver to borrow money, but only as a construction of the terms of the order heretofore made by this court in 1913 and not objected to by any party in interest when made in open court.

A decree will therefore be entered referring it to the present receiver, with the powers so far as need be of a special master to ascertain and report from the books of the company and from the other proper testimony (1) how much of the money borrowed from petitioner Iglesias now unpaid was used in the preservation of the property, (2)) how much was used for the operation of the central, including advances and cultivation of crop, the two amounts to be reported separately, and (3) how much

the crop of 1913–14 would have produced after deducting expenses of preservation of the mill and plant if the grinding had not been stopped. For the first a lien on crop and corpus will attach according to the principles above declared; to the second such a lien will be denied, except out of the estimated net crop proceeds, if any, found under (3) the third head.

It follows that the master's report is modified in part, that is to say, so far as it declares the whole claim of Iglesias an unsecured one, and the matter is referred to the receiver to proceed as above. The report shall have annexed to it the evidence taken, if any.

It is so ordered.