# Philadelphia to use *v.* Harry C. Nichols Company, Appellant.

*Municipalities—Contractors—Bonds to protect subcontractors and material men.*

Where a contractor's bond to secure subcontractors and material men, required by city ordinance, has been voluntarily given, it may be enforced according to its terms, although it exceeds the requirements of the ordinance.

A city ordinance provided that contractors for public work should execute a bond to pay all persons supplying them "with labor or materials, whether

as subcontractors or otherwise, in the prosecution of the work provided for in such contracts." The ordinance authorized anyone who had furnished "labor and materials, either as a subcontractor or otherwise," to bring suit on the bond in the name of the city to his use. The condition of such a bond was to pay "any and all persons, any and all sums of money which may be due, for labor and material supplied or performed in and about the said work." The contractor and the subcontractor for bricks both became financially embarrassed, and a material man of the subcontractor continued to furnish bricks to parties who were carrying on the original contracts who had an interest to do so. Suit was brought by the material man against the contractor, the surety in the bond, and the subcontractor. Another person was by amendment made a codefendant. Neither this person nor the subcontractor were partners of the contractor, and the surety was not charged as a surety for a partnership. The court amended the record by striking out the name of the subcontractor, and of the additional codefendant, as parties defendant, and a judgment was obtained against the contractor and the surety. *Held*, (1) that the bond was not broader than the purpose and scope of the ordinance, and could be enforced according to its terms; (2) that the surety was not relieved by reason of the work being carried on under the original contract by one having an interest in seeing that the contract was executed; (3) that the amendment of the record was properly allowed; (4) that a verdict and judgment for plaintiff should be sustained.

Argued Jan. 19, 1906. Appeal, No. 306, Jan. T. 1905, by defendant, from order of C. P. No. 4, Phila. Co., March T., 1901, No. 1,268, dismissing exceptions to adjudication in case of The City of Philadelphia to use of Edmund Webster and Andrew D. Keyser, trading as Edmund Webster and Nephew, v. The Harry C. Nichols Company, James Harffey and The Union Surety and Guaranty Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit upon a bond.

The case was referred to George Wharton Pepper, Esq., who found the facts to be as follows:

1. On March 30, 1896, the councils of Philadelphia passed an ordinance which was duly signed by the mayor. The ordinance was as follows:

" That hereafter any person or persons entering into a contract with the city of Philadelphia for the erection or construction of any public buildings or for the prosecution or completion of any public work, or for repairs upon any public building or public work, either in the capacity of subcontrac-

tor or material and supply man, or for labor furnished upon said buildings or work, shall be required before commencing such work to execute a penal bond in such sum as may be required by ordinance or by the head of a department or bureau, together with such sureties as may be required by ordinance or said head of department or bureau with the additional obligations that such contractor or contractors shall and will promptly make payment to all persons supplying him or them with labor and materials, whether as a subcontractor or otherwise, in the prosecution of the work provided for in such contract, and any person or persons making application therefor and furnishing affidavit to the department or bureau under the direction of which said work is being, or has been prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of such contract and bond upon which said person or persons supplying such labor and materials, either as a subcontractor or otherwise, shall have a right of action, and shall be authorized to bring suit in the name of the city of Philadelphia for his or their use and benefit against said contractor and sureties, and prosecute the same to final judgment and execution: Provided, that such action and its prosecution shall involve the city of Philadelphia in no expense, and that the person or persons so authorized to bring suit shall first furnish such indemnity to the city of Philadelphia against costs as shall be approved by the city solicitor: Provided, also, that said bond shall contain a condition that no suit shall be brought upon the same after the expiration of two years from its date."

2. On March 29, 1899, the Harry C. Nichols Company, a corporation formed under the laws of the state of Virginia, having been awarded by the city a contract for the building of a schoolhouse on the north side of Oxford street between Glenwood avenue and Corlies street, entered into a contract with James Harffey by which Harffey agreed to furnish the materials and do the brickwork for the school building covered by the Nichols company's contract with the city. The agreement recites that the Nichols company " has entered into articles of agreement with the city of Philadelphia." In point of fact, although the matter appears not to be material, the contract

between the Nichols company and the city was not entered into until June 20, 1899.

3. On April 14, 1899, Harffey as principal, and Andrew Diamond as surety, sealed and delivered to the Union Surety and Guaranty Company a bond for the faithful performance of the subcontract for the brickwork. The Union Surety and Guaranty Company exacted this bond for the reason that it was about to become surety for the Nichols company upon the bond to be given by the Nichols company as the principal contractor for the school building in the manner to be presently specified.

4. On June 5, 1899, the Nichols company, Harffey and Diamond entered into the following written agreement:

"Whereas The Harry C. Nichols Company, Harry C. Nichols, president, has entered into a contract with the city of Philadelphia for the erection and construction of a schoolhouse located at Oxford street and Glenwood avenue, Philadelphia aforesaid.

"And Whereas in the erection and construction of same said company contracted with Andrew Diamond and James Harffey both of the city of Philadelphia, contractors, to respectively assume the stonework (not cut stone) and brickwork thereof for the price or sum of seven thousand nine hundred dollars each.

"And Whereas in consideration of the assistance rendered said Nichols company by the said Diamond & Harffey whereby said contract was procured by Nichols company and the work and labor performed by the said Diamond & Harffey in the furtherance of the said Nichols company's contract whereby the same shall be performed.

"It is hereby expressly covenanted and agreed by and between the aforesaid Harry C. Nichols Company, Andrew Diamond and James Harffey, that the said company shall divide into two equal parts its net profits of the entire contract and give to the said Andrew Diamond and James Harffey jointly one half equal part, and the remaining one half equal part of said entire net profits to be retained by the said Harry C. Nichols Company.

"The said distribution of net profits to be in addition to the contract consideration of seven thousand nine hundred dollars

each aforementioned and not to be construed a revocation or alteration of same, and to be divided when said company has received its consideration in full from the city of Philadelphia.

It does not appear that either Harffey or Diamond ever acquired or exercised any powers of control over the performance of any portion of the work covered by the contract between the Nichols company and the city, except that part of the work described in the subcontract. As far as appears from the testimony, Harffey had no relation to the Nichols company except such as was created by his subcontract and such as was created by the contract above recited; and Diamond had no relation to the Nichols company except such as was created by the contract last mentioned and by his subcontract for stonework.

.5. On June 20, 1899, the Nichols company entered into a written contract with the city for the construction of the schoolhouse for $64,900. On the same day the Nichols company as principal and the Union Surety and Guaranty Company as surety, executed and delivered the city a bond in the sum of $32,450, reciting the construction contract of even date, and conditioned as follows :

" That if the said Harry C. Nichols Company shall and will promptly pay or cause to be paid to any and all persons any and all sum or sums of money which may be due for labor and materials furnished and supplied or performed in and about the said work, and shall and will comply with all the provisions of the ordinance of select and common councils of the city of Philadelphia, entitled ' An ordinance for the protection of subcontractors as well as for persons furnishing materials and labor for the construction of buildings for the city of Philadelphia or any other city work,' approved the thirtieth day of March, A. D. 1896 ; then this obligation to be null and void; otherwise to be and remain in full force and virtue."

The bond also contained the following provision :

" It being understood and agreed that no suit shall be brought upon this bond after the expiration of two years from the date hereof."

This is the bond in suit.

6. Both the Nichols company and Harffey duly entered

upon the performance of their contracts. In the course of such performance Harffey ordered bricks from Edmund Webster & Nephew, the plaintiffs. Before bidding on the work Harffey had applied to the plaintiffs for prices and had been quoted a price of $7.25 per thousand for hard bricks and $13.00 per thousand for re-pressed bricks. After the date of the contract between Harffey and the Nichols company, when Harffey gave an order for bricks, Edmund Webster, one of the plaintiffs, went to the office of the Union Surety and Guaranty Company and was there told that as the Nichols company and Harffey had given bond for the completion of the schoolhouse, there would be sufficient money to erect the building and that all would be paid : " All of us would get our money." A price was accordingly made by the plaintiffs to Harffey somewhat more favorable than the price originally quoted, to wit.: $7.00 per thousand for hard bricks and $13.00 per thousand for re-pressed bricks. The bricks were ordered from time to time as they were needed. They were delivered by the plaintiffs at the schoolhouse. All the bricks specified in the plaintiffs' statement were in fact so delivered and were used in the construction of the building.

7. On December 18, 1899, the city of Philadelphia, by ordinance, duly approved the contract between the Nichols company and the city, and approved the Union Surety and Guaranty Company as surety upon the bond theretofore given by the Nichols company to the city.

8. On or about January 15, 1900, Harffey got into financial difficulties, and Diamond, his bondsman, completed the work under the subcontract. On or about said date Diamond filed with the Union Surety and Guaranty Company a form of notice or assignment, signed by Harffey, and authorizing Diamond to receive such sums as would otherwise be payable to Harffey. Such bricks as were delivered by the plaintiffs after that date appear to have been charged upon their books just as they had previously been, and they appear to have been consigned to Harffey. The exact relation between Harffey and Diamond does not seem to have been clear to the plaintiffs ; but at least one of the partners in the plaintiff firm had notice during the continuance of the work that Diamond had taken up the Harffey contract.

9. In March, 1900, the Nichols company stopped work under its contract with the city. Thereupon one Levin took up the work and completed it. Levin's action in the matter is explained by the circumstances that he had made himself liable to indemnify the Fidelity and Deposit Company, which had in turn given a counter indemnity bond to the Union Surety and Guaranty Company in respect of the risk assumed by the last named company as surety upon the bond of the Nichols company to the city. On April 1, 1900, plaintiffs had delivered bricks of an aggregate price of $1,983.70, and they had received payments on account, one on "3/22/00 of $1,200" and one on "4/21/00 of $720.40," making a total of $1,920.-40; so that the balance due the plaintiffs at the time of the abandonment of the work by the Nichols company was only $63.30. All the bricks for the price of which this suit is brought were (with the exception of the small balance just mentioned) delivered by the plaintiffs at the schoolhouse after the failure of the Nichols company. The contract price of the bricks so delivered, plus the balance due April 1, 1900, was $2,725.75, upon which the plaintiffs are entitled to interest from July 6, 1900 (the date of the delivery of the last order), provided the Union Surety and Guaranty Company is liable at all.

10. Before issuing the writ in this cause, demand for payment was duly made by the plaintiffs upon the Nichols company, Harffey, and upon the Union Surety and Guaranty Company, and payment was refused. The plaintiffs also have furnished indemnity against costs to the city of Philadelphia in the sum of $100, as required by the ordinance of March 30, 1896.

11. After the testimony before the referee was closed and the cause had been submitted for his decision, counsel for the plaintiffs took a rule against Diamond to show cause why the judgment theretofore entered against him should not be opened. No cause having been shown, the rule was in due course made absolute. Counsel for plaintiffs then made to the referee a motion to amend the record by striking off the names of Harffey and Diamond as defendants.

The referee allowed the amendment by striking out the names of James Harffey and Andrew Diamond.

The referee found in favor of the plaintiff for $2,725.75.

*Errors assigned* were in overruling exceptions to referee's report.

*David Jay Myers*, for appellant, cited: Dunbar v. Fleisher, 137 Pa. 85; Folz v. Trust, etc., Co., 201 Pa. 583; North v; Yorke, 174 Pa. 349; Reynolds v. Barnes, 76 Pa. 427; Urich v. Zern, 2 Pa. Dist. Rep. 55; Hunter v. Reilly, 36 Pa. 509; Kennedy v. McNickle, 7 Phila. 217; Rudolph v. Sturgis, 11 Pa. Dist. Rep. 395; Pentz v. Pentz, 6 Pa. Dist. Rep. 708; Overseers of Roxborough v. Bunn, 12 S. & R. 292; Krause v. R. R. Co., 4 Pa. C. C. Rep. 60; McPartland v. Railroad Co., 18 W. N. C. 79; Wildermuth v. Long, 196 Pa. 541; Garman v. Glass, 197 Pa. 101; Meyers v. Elkins, 7 W. N. C. 280; Freeland v. R. R. Co., 2 Pearson, 73; Kaiser v. Roberts, 5 Kulp, 459.

*Joseph A. Culbert* and *John G. Johnson*, for appellee, were not heard.

OPINION BY MR. JUSTICE FELL, March 5, 1906:

This action was on a bond given by the Harry C. Nichols Company, principal, and the Union Surety and Guaranty Company, surety to the city of Philadelphia, conditioned that the Nichols Company should pay all sums due for labor or materials supplied in the erection of a schoolhouse for the building of which the said company had entered into a contract with the city. The Nichols Company contracted with one Harffey for the brickwork for the building and the use plaintiffs furnished the bricks used under his contract.

At the trial before the referee chosen by the parties, three grounds of defense were relied upon: First, that an action on the bond could not be maintained by a party who furnished materials to a subcontractor; second, that the surety was not liable for materials furnished after the subcontractor abandoned the work; third, that the misjoinder as defendants in the action of persons who are not obligors on the bond prevented a recovery and that an amendment could not be allowed.

The bond was given in pursuance of the ordinance of councils of March 30, 1896, entitled "An ordinance for the protection of subcontractors as well as for all persons furnishing labor and materials for the construction of buildings for the city of Phila-

delphia or for any other city contracts," which provides that any person entering into a contract with the city for the prosecution of any public work shall execute a bond to pay all persons supplying him " with labor or materials, whether as subcontractor or otherwise, in the prosecution of the work provided for in such contract." The ordinance authorizes anyone who has furnished "labor and materials, either as a subcontractor or otherwise," to bring suit on the bond in the name of the city to his use. The condition of the bond to pay " any and all persons any and all sums of money which may be due for labor and material supplied or performed in and about the said work" is more explicit than the requirement of the ordinance, but it is not broader than the purpose and scope of the latter. The bond having been voluntarily given, it may be enforced according to its terms, although it exceeds the requirements of the ordinance. The exact question here raised as to the construction of the ordinance was decided in Bowditch v. Gourley, 24 Pa. Superior Ct. 342, and we concur in the conclusion announced by that court that " to sanction any other construction would be destructive of the very purpose of the ordinance by taking from the honest labor or material man the particular security which the city councils had provided for his protection."

Both Harffey and the Nichols Company got into financial difficulties and Harffey's contract was carried out by one who had become liable to indemnify his surety. After the failure of Harffey the use plaintiffs continued to furnish bricks consigned and charged to him, but with notice that his bondsman had taken up the contract. New contracts were not made but the original contracts were carried to completion by parties having an interest to do so. There was no change in the relation of the contracting parties. The work was done under the contracts either by or for the parties who had agreed to do it, and the Union Surety and Guaranty Company was not relieved from liability on its bonds.

The action was brought against the obligors named in the bond and against Harffey. Diamond was by amendment made a codefendant, and judgment was entered against him for want of an affidavit of defense. This judgment on his motion was opened and the record was amended by striking therefrom his name and that of Harffey after the expiration of the period

specified in the bond as the limit of time in which suit could be brought. The writ was issued against the Nichols Company Harffey and the Union Surety and Guaranty Company as individuals, and Diamond was brought in as an individual defendant. The four defendants were not named in the statement as partners but it was averred in the statement that " Harffey and Henry C. Nichols Co. formed a partnership with one Andrew Diamond for the purpose of erecting and constructing the said building." This averment was erroneous and would have been useless if correct. But it did not charge the Union Surety and Guaranty Company as a partner, nor charge it as surety for a partnership. The amendment was therefore properly allowed. The cause of action was the obligation of the bond. The striking out of the names of those defendants who had assumed no liability did not change the cause of action against the obligors, nor alter nor increase their liability, nor charge them in any other capacity than that in which they had been sued.

The judgment is affirmed.