Argued June 21, affirmed July 30, rehearing denied September 20, 1921.

CLATSOP COUNTY ex Rel. HILDEBRAND *v.* FELDSCHAU et al.

(199 Pac. 953.)

**Highways—Award of Contract Sufficient Consideration for Promise by Principal and Surety to Pay Materialmen.**

1. Award of a contract for an improvement is a sufficient consideration for the promise of a contractor and his surety to pay indebtedness incurred in performance of the work.

101 Or.—24

**Highways—Persons Furnishing Credit or Supplies for Whose Benefit Contractor's Bond is Given may Sue Thereon, Though Consideration not Directly Moving from Him.**

2. Those furnishing credit or supplies to a contractor, who has given a bond for their benefit, may ordinarily sue on the bond, on the principle that a third person for whose benefit a contract is made by another may sue thereon, though the consideration does not directly move from such person.

**Highways—Provision of Contractor's Bond for Payment of All Just Debts Valid, Though in Excess of Statutory Requirement.**

3. Where the bond required by a county of a contractor doing improvement work provided for payment of "all just debts, dues, and demands incurred in performance of the work," though the statute merely required the bond to be conditioned for the payment of labor and materials, such provision is valid and binding on the surety, and recovery may be had against the surety for supplies furnished the contractor for the housing and maintenance of his men, etc.; the work being done in rural districts, where there were no accommodations for men.

From Clatsop: J. A. EAKIN, Judge.

Department 2.

This is an action brought on a public improvement bond, for materials furnished in the performance of road work for Clatsop County. The cause was tried by the court without the intervention of a jury. Findings of fact were made, and a judgment rendered in favor of plaintiff. The defendant, United States Fidelity & Guaranty Company, prosecuted an appeal directed against the judgment on two of the several causes of action included in the complaint. The claimants whose judgments are contested are August Hildebrand and Judd Brothers.

The defendant, F. C. Feldschau, on February 13, 1917, entered into a written contract with Clatsop

---

2. On implied power to incorporate in contract for public work or in contractor's bond the requirement that the contractor shall pay laborers and materialmen, see notes in 11 L. R. A. (N. S.) 1928; 46 L. R. A. (N. S.) 325.

On right of subcontractor, materialman or laborer to maintain action on contractor's bond to owner, see notes in Ann. Cas. 1916A, 758, 773; 27 L. R. A. (N. S.) 573; L. R. A. 1915A, 768.

County to improve a portion of the Lewis & Clark County Road. This contract contained among other things provisions for a bond which was exacted as part of the contract, from the contractor by Clatsop County. The bond was executed by F. C. Feldschau, as principal, and the United States Fidelity & Guaranty Company, as surety, in the penal sum of $10,311. The bond, in addition to provisions for performance of the contract by the principal, contained the stipulation that the principal "shall pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work, and shall in all respects faithfully perform said contract according to law, then this obligation shall be void, otherwise to remain in full force and effect."

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. C. J. Young.*

For respondent there was a brief and an oral argument by *Mr. Edw. C. Judd.*

BEAN, J.—Section 2991, Or. L., requires a contractor on public work entering into a formal contract with a county, to execute the usual penal bond with good and sufficient sureties with the additional obligations "that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts"; and pro-

vides that persons furnishing such labor and materials shall have a right of action against the contractor and his sureties.

It will be noticed that in addition to the requirements of the statute prescribing the conditions of the bond, the instrument in question contains the provision for the payment of "all just debts, dues and demands incurred in the performance of such work." Pursuant to the contract, Feldschau, about March 15, 1917, entered into the performance of the work, and conducted the same until the latter part of September, 1917. The road, which by the terms of the contract was to be improved, was not situated near any town or village, and in order that he could carry on the work it was necessary to maintain suitable living quarters and accommodations for a large number of laborers who were employed on the work. In order to furnish the necessary quarters and provisions, the contractor was required to establish and maintain a camp where the necessities of life for the employees could be obtained and the men could be housed.

The question involved is stated in the brief of counsel for appellant, as follows:

"The bond has a dual aspect, i. e., for the faithful performance of the work and the payment for labor and material, but there is involved here only the statutory provision that the contractor 'shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts.' The bond is broad in its terms, but is of course to be construed in the light of the statute, pursuant to which it was exacted. * *

"The Surety Company which is appellant here, does not question the correctness of any of the charges, or that these mercantile houses made the

sales claimed. It rests its case solely upon the fact that the articles for which claim is asserted are not in any proper sense comprehended under the term 'materials' used in the statute.''

In other words, the contention of the appellant is that the part of the bond which is in addition to the one compelled by the statute is of no force, and that the county was not authorized to require such an additional stipulation in the bond. We are not aware that this question, under our present statute, has been passed upon by this court. The materials and supplies which were furnished by Hildebrand & Company consisted of camp equipment and utensils such as were used in a camp in construction work of this kind, which were only meant to be used and to last during the period of improvement.

The material and supplies furnished by Judd Brothers consisted of men's wearing apparel, bedding, overalls, underwear and socks, which were purchased by Feldschau and furnished to his employees, and the price for the same deducted from their daily wages.

The trial court found that a number of items furnished by the relator to Feldschau consisted of knives, forks, cooking utensils, and dishes, amounting to $85.75, which were not used up in the prosecution of the work, should be deducted from the claim. The trial court, among other things, found:

''That during the prosecution of said work and between the first day of March, A. D. 1917, and the first day of June, A. D. 1917, the relator, August Hildebrand, at the request of F. C. Feldschau, sold and delivered to such defendant a large quantity of supplies and camp equipment which were reasonably worth the sum of $428.92, and for which the said defendant,

F. C. Feldschau, agreed to pay to the relator, August Hildebrand, the sum of $428.92. * *

"Regarding relator's further and second cause of action against defendants the Court finds that during the prosecution of said work and between the twelfth day of March, A. D. 1917, and the fourth day of July, A. D. 1917, that Edw. C. Judd and Geo. F. Judd, copartners doing business under the firm name and style of Judd Brothers bargained, sold and delivered to defendant, F. C. Feldschau, goods, wares and merchandise consisting of men's wearing apparel, overalls, gloves, mittens, blankets, comforters and other things necessary for working men, at the agreed and stipulated price of $179.45, and that said goods, wares and merchandise so sold and delivered by the said Judd Brothers to the said F. C. Feldschau were used by the said F. C. Feldschau in carrying on the work of said contract and were exchanged by the said F. C. Feldschau with his laborers for wages."

As we understand the record, it is not questioned but that the amounts in controversy were just debts and demands incurred in the performance of the work. Many of the supplies would not be considered as "labor or materials" within the strict letter of the statute. If the additional provision referred to contained in the bond is invalid, plaintiff cannot recover for the same in this action.

1–3. It is unquestioned that Feldschau voluntarily entered into a contract with Clatsop County. The county was authorized to make such contract. The surety company in the ordinary course of business, and it may be fairly assumed, for compensation, voluntarily obligated itself as sponsor for Feldschau in the faithful performance of the contract, and the performance of all of the conditions incorporated in the bond. The parties were competent to enter into the undertaking. The bond was not repugnant to the let-

ter or policy of the law, but was strictly in accordance
with the policy of the law in this state to provide for
the payment of labor and supplies and expenses in
the construction of public works. Although the stat-
ute did not require all of the conditions to be enumer-
ated in the bond, the county authorities were under a
moral duty to protect persons with whom the contrac-
tor incurred such indebtedness in the performance of
the work. The award of the contract for the im-
provement was a sufficient consideration for the
promise of the contractor and his surety to pay such
indebtedness. It is generally held that those furnish-
ing supplies or extending credit for whose benefit
such a bond is given may sue upon the bond on the
principle that the third person for whose benefit a
contract is made by another may maintain an action
thereon, although the consideration does not directly
move from such third person: See 1 Elliott on Roads
and Streets (3 ed.), § 646. As in regard to most
questions the authorities are not all one way.

It is stated in 9 C. J., page 29, Section 45, thus:

"A bond, whether required by statute or order of
court or not, is good at common law if it is entered
into voluntarily by competent parties for a valid con-
sideration, and is not repugnant to the letter or policy
of the law; and such a bond, other than an official
bond, is enforceable according to its conditions,
although they are more onerous than would have been
required if a statutory bond had been given for the
same purpose. This rule has been applied to bonds
given to the United States."

In observing the precedents in other states we find
that the case of *Puget Sound State Bank* v. *Gallucci*,
82 Wash. 445 (144 Pac. 698, Ann. Cas. 1916A, 767),
was an action upon contracts and bonds similar to

those in the present case. The bank loaned money to the contractor for the purpose of paying for labor performed and materials used in the improvement. By the contracts and bonds in that case the contractor and his surety undertook to pay all "just debts, dues and demands incurred in the performance of said work." We quote from the opinion at page 457:

"Some contention is made that we should regard the city's right to recover upon the bonds the same as if we had before us the bonds only, with their required statutory conditions, and not the broader provisions of the contracts touching debts incurred in the performance of the work, which we have noticed was also secured by the bonds. The fact, however, that the bonds in connection with the provisions of the contracts secured thereby are farther reaching than the strict statutory conditions of such bonds, we think, does not render the farther reaching conditions here involved inoperative or void. The law seems to be well settled that bonds of this nature may be required by, and given to, a public corporation in excess of, or without any statutory authority and the beneficiaries thereunder be none the less entitled to recover thereon. *Smith* v. *Bowman,* 32 Utah, 33 (88 Pac. 687, 9 L. R. A. (N. S.) 889); *Denver* v. *Hindry,* 40 Colo. 42 (90 Pac. 1028, 11 L. R. A. (N. S.) 1028)."

It was there held that the surety on the bond was liable for the money so loaned by the bank, pursuant to an arrangement therefor to enable the contractor to pay for labor and supplies.

The case of *Guaranty & Surety Co.* v. *State ex rel.,* 61 Ind. App. 268 (109 N. E. 237), was an action on a bond given to secure the performance of a contract for the construction of a free gravel road. The statute of that state provided for a bond conditioned, among other things, for the benefit of third persons that the contractor should pay for any labor or mate-

rial therefor that shall have been furnished either to him or to any subcontractor, agent or superintendent under him. The bond given, as shown by the opinion, was conditioned among other things that the contractors "shall promptly pay all debts incurred by them in the prosecution of said work, including labor, materials furnished and for the boarding of laborers thereon." Mr. Justice COLWELL, speaking for the court said, as shown on page 242:

"It is thus apparent that the bond here is conditioned more broadly than required by said section, in that it contains the provision respecting the payment of all debts incurred and all claims for boarding laborers. There is, however, no statute that prohibits a board of county commissioners from taking or requiring a bond thus broadly conditioned."

This opinion was adhered to upon rehearing: See 61 Ind. App. 268 (111 N. E. 19).

In *Williams* v. *Markland,* 15 Ind. App. 669 (44 N. E. 562), a bond taken by a township trustee, to secure labor and material on a contract for building a schoolhouse, was held to be a valid obligation, although not provided for by statute; and one suing to recover for material and labor was held entitled to maintain an action thereon. The court said: "That one has a right to maintain an action upon a contract made with another for his benefit, is established in our state, and is not controverted by appellee's learned counsel."

In the case of *Union Sheet Metal Wks.* v. *Dodge,* 129 Cal. 390 (62 Pac. 41), a contractor on a schoolhouse gave a bond to the district that he would pay all his subcontractors, laborers and materialmen. A materialman brought suit on this bond. It was held that although there was no statutory provision for

such bond, it inured to the benefit of plaintiff, who could sue upon it; and the defendant was estopped from claiming that it was not the kind of bond required by law.

In *St. Louis Use of Glenco Lime & Cement Co. v. Von Phul,* 133 Mo. 561 (54 Am. St. Rep. 695, 34 S. W. 843), it was held that a city could require from a contractor a bond to protect materialmen and laborers, although this bond was not provided for by charter. This bond authorized a suit by a materialman in the name of the city, for his use. It was held that under the power granted to repair streets, the implied power existed to exact such a bond.

In *Devers v. Howard,* 144 Mo. 671 (46 S. W. 675), a city required a contractor on a well to give a bond to protect labor and material. It was held that a materialman could maintain an action on this bond, although the charter or statute did not provide for such bond.

In *Sample v. Hale,* 34 Neb. 220 (51 N. W. 837), a state board was held authorized to require a contractor on a public building to contract to protect labor and material. A materialman was held entitled to sue on a bond for the faithful performance of the contract.

The cases of *Doll v. Crume,* 41 Neb. 655 (59 N. W. 806), *Lyman v. City of Lincoln,* 38 Neb. 794 (57 N. W. 531), *City of Philadelphia v. Harry C. Nichols Co.,* 214 Pa. 265 (63 Atl. 886), *American Surety Co. v. Raeder,* 15 Ohio C. C. 47, *Philadelphia v. Stewart,* 195 Pa. 309 (45 Atl. 1056), and *State ex rel. Palmer v. Webster,* 20 Mont. 219 (50 Pac. 558), support the same principle. In *Knapp v. Swaney,* 56 Mich. 345 (23 N. W. 162, 56 Am. Rep. 397), the plain language

of Mr. Chief Justice COOLEY, in discussing this principle, is so convincing that we quote it at the risk of being lengthy. In that case it appears that the board of county commissioners contracted for the erection of a courthouse. One of the provisions of the contract was to the effect that before any partial payment should be made there should be no "legal or lawful claims against the contractor in any manner, from any source whatever, for work or materials furnished on said work and buildings." The question was, "are the contractors under the contract, or the relators, as their assignees, entitled to payment while there are outstanding claims for materials or labor?" The argument on this point shortly stated was that the board of supervisors as a corporation, or a *quasi* corporation, possesses only certain powers expressly mentioned and defined by law and that among these is no power to interpose between employers or purchasers and the persons with whom they deal, for the purpose of compelling the performance of contract obligations which such employers or purchasers have assumed. Chief Justice COOLEY said:

"A corporation, when constructing a public building or other public work, is chargeable with moral duty, as an individual would be, to see that it is so constructed that people may not be injured in coming near to or making use of it in a proper manner. In some cases they may not be legally responsible for failure to perform this duty; but where the moral obligation exists, it cannot be said that any provision for its performance, not improper in itself, is *ultra vires*. A county may go to great pains and great expense to make its courthouse unquestionably safe, that individual citizens may not suffer injuries consequent upon its construction. But if it may do this, it would be very strange if it were found lacking in

authority to stipulate, in the contract for the building, that the contractors when calling for payment, shall show that they are performing their obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of a few of its people. We cannot think such is the case. We are of opinion that there was nothing *ultra vires* in this condition, and that the relators are bound by it.''

Coming back home, we find the same principle was maintained in an able opinion by Mr. Justice WOLVERTON in the case of *Hamilton v. Gambell,* 31 Or. 328 (48 Pac. 433). It was held that the Portland City Charter, Section 118, requiring a bond with certain conditions, is not a limitation on the manner in which contracts may be drawn, but is a proviso that no contract shall be made without that kind of bond; that the regulation of the ordinance was a reasonable one intended to comply with the moral duty resting alike on public corporations and private persons, to see that those who perform services for them, whether directly or indirectly, are paid.

"The great weight of authority," reads the note in 11 L. R. A. (N. S.), page 1028, "sustains the power of a municipality to make such contracts, even though they are not expressly authorized by the legislature.''

The precedents cited on behalf of appellant, all of which we have examined, mostly refer to cases involving liens. Such cases are of little assistance in considering the question involving contracts and bonds like those in the instant case.

Our statute enjoins the duty upon the State of Oregon, or any municipality, county or school district, in entering into a contract for the construction of any public work, to require the usual penal bond with

sureties, with the additional obligations that the contractor shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in the contract, for the protection of laborers and materialmen, and provides that in case the contractor shall fail to pay for such work and materials, and the officers of the State of Oregon or any such municipality, county or school district within the state shall fail or neglect to require the execution of such bond, then the State of Oregon and the officers authorizing such contract, or the municipality, county or school district and the officers authorizing such contract, as the case may be, shall be jointly liable for such labor and materials. These provisions of our statute do not limit the authority of officials of a county in making a contract for public work. They do not prevent county officials from providing in such contract, and in a bond securing the performance thereof, for the payment of all persons who shall supply ''such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work and all just debts, dues and demands incurred in the performance of such work.'' Such provisions are in conformity to a moral duty resting upon county officials to see that its citizens and others who furnish laborers and subcontractors with materials and supplies, and extend credit to a contractor to assist in the performance of the public work are protected. Such provisions tend to promote efficiency in the construction of the roads of a county. They are in the interest of justice and equity, and are not *ultra vires*. They do not in any way contravene any statute or public policy of this state.

The plain provisions in the bond in suit are binding and enforceable against Feldschau, the contractor, and his surety, the appellant.

It follows that the judgment of the Circuit Court should be affirmed. It is so ordered.

AFFIRMED. REHEARING DENIED.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.