**FIDELITY & DEPOSIT CO. OF MARYLAND v. SMITH.    (No. 10933.) ***

(Court of Civil Appeals of Texas. Fort Worth. Feb. 7, 1925. Rehearing Denied March 21, 1925.)

1. **Waters and water courses** ⬅228½; New, vol. 10A Key-No. Series—One suing on subcontractor's bond for materials furnished held not entitled to invoke statutes relating to water improvement districts.

A contract between the original contractor and another as subcontractor for construction of portion of irrigation ditch and an indemnity bond insuring performance of such subcontract are not within scope of Vernon's Sayles' Ann. Civ. St. 1914, arts. 5107—87, 5107—88, 6394f to 6394h, relating to contracts with water improvement districts and bonds thereon, nor is one suing on such bond for materials furnished to subcontractor's employés entitled to invoke protection of such statutes.

2. **Waters and water courses** ⬅228½, New, vol. 10A Key-No. Series—Intention of parties controlling in determining subcontractor's liability for materials for construction of irrigation ditch.

In determining whether a subcontractor contracting with original contractor to construct portion of irrigation ditch is liable under his contract and bond to one furnishing materials to subcontractor's employés, the in-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 27, 1925.

tention of parties as gathered from express stipulations is only test.

3. **Waters and water courses ⊙⟹228½, New, vol. 10A Key-No. Series—One furnishing supplies to subcontractor's employés held not entitled to sue as beneficiary on subcontractor's bond.**

Where neither contract between original contractor and another as subcontractor for construction of portion of irrigation ditch nor bond insuring performance of such subcontract expressly stipulated that any one furnishing supplies to subcontractor should have right of action on subcontractor's bond, but on contrary only beneficiaries named in bond were original contractor and water improvement district, *held* that it was intention of parties, which is controlling, that no one not expressly named beneficiary would be entitled to sue on such bond and hence one furnishing material to subcontractor's employés is not entitled as beneficiary to sue on subcontractor's bond.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by J. S. Smith against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff, and defendant appeals. Reversed and rendered for defendant.

Albert B. Hall, of Dallas, for appellant.

Fischer & Fischer, of Wichita Falls, for appellee.

DUNKLIN, J. The W. E. Callahan Construction Company entered into a contract with the Wichita County water improvement district No. 1 to construct certain irrigation ditches in Wichita and Archer counties. Thereafter the construction company sublet to W. E. Cecil the construction of three miles of such ditches; the work to be done by Cecil being the same as shown in the original contract as "schedule 3" and embracing "Southside Canals." The subcontract was in writing, and signed by the Callahan Construction Company and Cecil. It stipulated that Cecil would construct three miles of irrigation ditches in strict compliance with the obligations of the construction company to the water improvement district. In the contract the construction company was designated as party to the first part and Cecil as party of the second part. Among others, the contract contained stipulations to the effect that the party of the second part would do the work contracted for in strict compliance with the terms of the original contract of the Callahan Construction Company with the water improvement district. The contract contained these further provisions:

"Party of the second part further contracts and agrees to forever protect and save party of the first part and its successors and assigns harmless from any and all loss, cost, or expense, including its reasonable attorneys' fees, resulting or that may be claimed to have resulted, from the manner in which and means by which this contract is performed. * * *

"Party of second part further contracts and agrees to perform said contract in a good and workmanlike manner, and to complete the same within the time herein mentioned, and in the manner specified in the original contract, made and entered into by party of first part with said water improvement district; and further agreed that this contract shall not be considered as having been duly performed until any and all work done thereunder has been finally accepted by said water improvement district, and the party of first part finally released and discharged from any and all liability under said original contract, in so far as it relates to the items embraced in schedule 3, hereinabove particularly mentioned.

"Party of second part further contracts and agrees that this agreement shall not take effect until the party of second part shall have executed and delivered to party of first part a good and sufficient bond in a sum equivalent to fifty per cent. (50%) of the aggregate amount to become due and payable to party of second part, hereunder, signed by good and solvent surety company, acceptable to party of first part, and payable to said water improvement district No. 1, and party of first part at Wichita Falls, Wichita county, Tex., conditioned upon the full and faithful performance of this agreement, and of said original contract, executed by party of first part, in so far as it relates to the items in schedule 3 hereinabove mentioned, and that the party of second part will pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used, in the performance of this agreement, as well as any and all other expense incurred in the performance or attempted performance thereof. * * *

"It is expressly stipulated and agreed that this contract and no part thereof shall not be transferred, assigned, or sublet by party of second part to any person or corporation; whomsoever, without the written consent of party of first part; and that no part of any money or moneys that shall become due and payable to party of second part hereunder shall be transferred, assigned, or hypothecated without such written consent.

"It is further stipulated and agreed that this contract shall not become effective or binding upon either party hereto until the same shall have been approved by said Wichita County improvement district No. 1, as evidenced by its written indorsement hereon."

The contract was signed by the Callahan Construction Company and by Cecil, and the approval of the Wichita County improvement district No. 1, by R. A. Thompson, its chief engineer, was indorsed thereon, as stipulated should be done.

On the same day the contract was executed Cecil, as principal, and the Fidelity & Deposit Company of Maryland, as surety, executed and delivered to the W. E. Callahan Construction Company the following bond:

"State of Texas, County of Wichita:

"Know all men by these presents that, whereas, on the 2d day of February, A. D. 1922, W. E. Cecil, of Duncan, Okl., made and

entered into a written contract with the W. E. Callahan Construction Company, wherein the said W. E. Cecil undertook the full performance of a certain contract made and entered into by the W. E. Callahan Construction Company with the Wichita County water improvement district No. 1, of Wichita county, Tex., in so far as said contract related to certain items, particularly mentioned in schedule 3, item 1, miles 15, 16, 17 of the plans, specifications, and general instructions thereto attached and marked Exhibit A, to which contract and exhibit reference is here made for a more particular description.

"And, whereas, in said contract the said W. E. Cecil contracted and agreed to execute and deliver a good and sufficient bond, payable to said Wichita County water improvement district No. 1, Wichita county, Tex., and the W. E. Callahan Construction Company in the sum of eight thousand and no/100 dollars at the city of Wichita Falls, Tex., conditioned on the full and faithful performance of said contract and the payment by the said W. E. Cecil of the sum of money due and to become due for supplies, teams, equipment, material, and labor used and contracted to be used in the performance of said agreement as well as any and all other expense incurred in the performance or attempted performance thereof:

"Now, therefore, know all men by these presents, that W. E. Cecil, as principal, and Fidelity & Deposit Company of Maryland, as surety, jointly and severally hereby acknowledge themselves and each of them jointly bound and obligated to pay to the said Wichita County water improvement district No. 1 of Wichita county, Tex., and the said W. E. Callahan Construction Company, jointly and severally, the sum of eight thousand and no/100 dollars at the city of Wichita Falls, Tex., in good and lawful money of the United States of America.

"Now, the condition of this bond and undertaking is such that if the said W. E. Cecil shall fully and faithfully perform its said agreement, of date the 2d day of February, 1922, and said original contract executed by W. E. Callahan Construction Company with said Wichita County water improvement district No. 1, in so far as they relate to the items mentioned in schedule 3 of Exhibit A attached to each of said contracts, to which exhibit reference is here made for a more particular description of said items, and if the said W. E. Callahan shall pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used in the performance of said contract, as well as any and all other expense incurred in the performance or attempted performance thereof, then this bond or undertaking shall become null and void; otherwise it shall remain of full force and effect."

This suit was instituted by J. S. Smith to recover for groceries, merchandise, and feed furnished by him to the employés of Cecil who worked for him in the construction of the ditches; plaintiff alleging in his petition that the articles were furnished upon the credit of Cecil, who agreed to pay therefor.

The suit was originally instituted against the Callahan Construction Company, the Witchita County water improvement district No. 1, W. E. Cecil, and W. E. Crumby, but the trial was had on plaintiff's first amended original petition, in which it was recited that pleas in abatement by the construction company and the water improvement district had been sustained and the cause dismissed as to those defendants. The petition further recited that the suit had been dismissed as to defendant Cecil because he was a nonresident of the state and beyond the jurisdiction of the court, and also as against Crumby because he had been adjudicated a bankrupt. In the amended petition so filed judgment was sought against the Fidelity & Deposit Company of Maryland alone, and judgment was rendered against that defendant in favor of Smith for the sum of $1,800.17. From that judgment the defendant has prosecuted this appeal.

The trial was before the court without a jury, and findings of fact filed by the trial judge appear in the record. There is also in the record a statement of facts.

The two principal questions to be determined are:

(1) Whether or not plaintiff was entitled to sue upon the bond of the defendant as a beneficiary thereof; and

(2) Whether or not the articles of merchandise furnished to Cecil's employés and for which a recovery was sought can be held to be supplies necessary to the construction of the ditches which was undertaken by Cecil.

The following articles of the statutes pertaining to water improvement districts, found in chapter 2, title 73, Vernon's Sayles' Ann. Civ. St. 1914, are invoked by plaintiff:

"Art. 5107—87. All contracts made by the * * * district shall be in conformity with and subject to the provisions of this act, and the provisions of this act shall be a part of all contracts in so far as applicable to either the contractor or the district, and the provisions of this act shall govern whenever the contract is in conflict herewith. The contract shall be reduced to writing and signed by the contractors and * * * directors, and a copy of same so executed shall be filed with the county clerk of the county or counties in which said district is situated, which said copy so filed with said county clerk shall be recorded in a book kept for that purpose, and be subject to public inspection.

"Art. 5107—88. The person, firm or corporation to whom such contract is let shall give bond payable to the * * * district in such amount as the directors may determine not to exceed the contract price, conditioned that he, they or it, will faithfully perform the obligations, agreements and covenants of such contract, and that in default thereof they will pay to said district all damage sustained by reason thereof. Such bond shall be approved by the * * * directors, and shall be deposited with the depository of the district, a true copy thereof being retained in the office of such directors."

Also the following general statutes:

"Art. 6394f. That any person or persons, firm or corporation entering into a formal contract with this state or its counties or school district or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state or any municipality on the bond of the contractor, and to have 'their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claims and judgment of the state or municipality. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the state or municipality, the remainder shall be distributed pro rata among said interveners. The bond provided for may be made by a surety company authorized to do business in Texas.

"Art. 6394g. If no suit should be brought by the state or municipality within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the state or municipality that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action for his or their use and benefit, against said contractor and his surety, and to prosecute the same to final judgment and execution.

"Art. 6394h. When suit is instituted by any of such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; provided that if the contractor quits or abandons the contract before its consummation, suit may be instituted by any of such creditors on the bond of the contractor, and shall be commenced within one year after abandonment of said contract, and not later.

"Where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contractor, and not later."

[1] Appellee insists that the bond sued on is such a bond as is contemplated by the last-quoted article of the general statutes, and

therefore he had the right to sue thereon as a beneficiary under and by virtue of the express terms of article 6394g. That contention is overruled. The contract between Cecil and the Callahan Construction Company for the work to be performed was a contract by Cecil as a subcontractor, who was alleged in plaintiff's petition to be such, with the construction company, the original contractor, and not with the water improvement district, and therefore that contract did not come within the scope of any of the articles noted; and the same is true of the bond sued on. That was an obligation conditioned on the full and faithful performance of Cecil's contract with the construction company. The bond shows upon its face that it was given to insure the faithful performance of Cecil's contract with the construction company. While the water improvement district was made a payee in the bond, it appears from the concluding portion thereof that the only condition for its obligation of liability to the district was that the construction company should pay all sums of money for supplies, teams, equipment, material, and labor used or contracted to be used in the performance of Cecil's contract. In other words, the contract seems one of indemnity to the construction company for the full performance of Cecil's contract with that company in the first instance, and a contract of indemnity with the water improvement district in the second instance to insure the payment by the construction company for supplies, teams, equipment, material, and labor used or contracted to be used, as well as all other expenses incurred by Cecil in the performance of the work. The bond was not executed by the construction company; it was the contract of Cecil and the surety company only. It shows on its face that it was merely an indemnity bond to insure the performance of Cecil's subcontract with the original contractor, the construction company; it was in no sense an original contract for the construction of the irrigation ditches. It does not appear upon the face of the bond or Cecil's contract with the construction company that either of those instruments were intended as a substitute for and to take the place of the original contract of the construction company with the water improvement district to construct the three miles of irrigation ditches mentioned in Cecil's contract. Nor was that claim made in plaintiff's pleadings. Indeed, in plaintiff's petition, the following allegations were made:

"That on said 2d day of February, 1922, the defendant Fidelity & Deposit Company of Maryland, in order to guarantee that the said W. E. Cecil would fully and faithfully perform his contract and agreement with the said W. E. Callahan Construction Company and pay all sums of money due and to become due for supplies, teams, equipment, material, and labor used or contracted to be used in the per-

formance of said contract, as well as any and all other expenses incurred in the performance of said contract, or attempted performance thereof, entered into a bond or undertaking in writing with the said defendant W. E. Cecil as principal and the said defendant Fidelity & Deposit Company of Maryland as surety, by the terms of which it guaranteed that the said W. E. Cecil would fully and faithfully perform his contract and agreement with the said W. E. Callahan Construction Company dated February 2, 1922, for the construction of the said three miles of irrigation ditches as aforesaid, and pay all sums of money due and to become due for supplies, teams, equipment, material and labor used or contracted to be used in the performance of said contract, as well as any and all other expenses incurred in the performance of said contract, or attempted performance thereof."

And while it is recited in the petition that the bond was made payable to the water improvement district as well as to the construction company, it contains no allegation that the bond was intended otherwise than as a surety obligation that Cecil would perform his contract with the construction company as shown in the allegations quoted.

It is further insisted that at all events plaintiff was entitled as a beneficiary to sue upon the bond for the supplies furnished to Cecil's employés, even though the contract and bond be held not to come within the scope of the statutes referred to. The contention is made that the contract and bond, viewed as common-law contracts, made all persons furnishing supplies to Cecil, to enable him to perform his contract, beneficiaries by the terms of those instruments. The case of Mosher Mfg. Co. v. Equitable Surety Co. (Tex. Com. App.) 229 S. W. 318, is the authority chiefly relied on by the plaintiff to sustain this contention. In that case Kelley entered into a written contract with Anderson county to construct a courthouse; he, as principal, and the Equitable Surety Company, as surety, executing a bond to the county. The Mosher Manufacturing Company recovered a judgment against the surety company for supplies furnished to Kelley, the contractor, and that judgment was affirmed by the Supreme Court. The following was said in the opinion in that case:

"The bond now under consideration was to become void upon the doing of the following things by Kelley: First, that he should faithfully and fully perform and carry out all the things by him agreed to be done in said contract within the time and manner and form as therein set out; second, that he should pay all claims for labor and material used in the construction of said building; and, third, that he should fully indemnify and save harmless Anderson county against all damage and cost which it might suffer or incur by reason of the failure of Kelley to carry out and perform the contract.

"If the only purpose in the insertion of the second obligation was to save the promisee harmless and to indemnify it against loss and damage, then plaintiff in error cannot recover; but, if it was incorporated for the benefit of materialmen and laborers, they may invoke it for their protection.

"The first and third clauses provide for the indemnity to the county and are entirely separate and distinct obligations from the second clause. The absolute independence of the first and third obligations to the second obligation is emphasized in the settlement the county had with defendant in error. While the parties to that agreement recognized the existence of the unpaid claims, no attempt was made by the county to invoke the bond for the protection of those claims. The county had its protection, under the first and third clauses, regardless of the second clause, and therefore the second could afford it no protection other than that which flows as a result of the laborers and materialmen being protected. The protection thus afforded materialmen and laborers is, as has been pointed out, a sufficient justification for incorporating such a covenant in the bond. * * *

"The case of the National Bank of Cleburne v. G., C. & S. F. Ry. Co., 95 Tex. 176, 66 S. W. 203, was relied upon by the honorable Court of Civil Appeals in support of its judgment reversing and rendering this cause. That case is clearly distinguishable from this one. The controlling factor in any contract is the intention of the parties. This intention, when ascertained, must alone govern. In Bank v. Railway, supra, liens by materialmen, laborers, and mechanics might have been secured upon the property of the railway company by virtue of compliance with article 3294, Revised Civil Statutes 1895, under consideration in that case. The Supreme Court there held that the only intention of the parties, as fully expressed in the context of the bond, was to indemnify the railway company against the probable liens provided for by the statute mentioned, and that, as this was the only purpose of the bond, and no lien having been created, and no liability of the railroad to the plaintiffs having been shown, there was no breach of the condition of the bond, and therefore no right of action upon it.

"In the instant case no lien could be fixed against the property of the county; neither was nor could it be made answerable to the unpaid creditors for material furnished or labor performed in the prosecution of the work. It being entirely proper for Anderson county to include a provision in the contract requiring Kelley to pay for all claims for labor and material used in the construction of the building, and as such a provision could in no wise inure to the benefit of the county, it follows as of course that the intention of the parties in inserting such clause was to protect those to whom the contractor should become indebted for material furnished and labor performed, and plaintiff in error, being an unpaid materialman, was entitled to invoke the bond for his benefit."

[2, 3] The intention of the parties to the instruments, as gathered from their express stipulations, is the only test for the determination of the question now under discussion, as was said in the opinion referred to above.

Cecil's contract with the construction company was to construct three miles of irrigation ditches in accordance with the requirements. of the contract of the construction company with the water improvement district, which had already been executed, and to execute a bond conditioned upon the full and faithful performance of his contract, and further conditioned that Cecil would "pay all sums of money due and to become due for supplies, teams, equipment, material, or labor used or contracted to be used in the performance of said contract, 'as well as any and all other expenses incurred in the performance or attempted performance thereof." Although the written agreement between Cecil and the construction company bound Cecil to execute a bond payable to the construction company and the water improvement district, those were the only two conditions which were stipulated should be included in the bond. Neither the contractor nor the bond expressly stipulated that any one furnishing supplies to Cecil should have a right of action thereon, or that the same was made for his benefit. On the contrary, the only beneficiaries expressly named were the construction company and the water improvement district. We think the case distinguishable from the Mosher Mfg. Company Case, in that in this case there were but two conditions in the bond, one of which was to insure the construction of the work undertaken by Cecil and the other to indemnify the construction company and the water improvement district against any possible loss to either for supplies and other materials which Cecil might purchase in order to construct the work. Even in the absence of any statute giving a lien against the irrigation ditches for supplies furnished Cecil in the construction thereof, the construction company would have the legal right, and it would not be unreasonable, to require a bond of indemnity to insure the construction company and also the water improvement district, to which it was liable for the performance of the work, against any possible judgment for such supplies, even though such judgment would not be secured by any statutory lien of any character. Apparently that construction of the bond was recognized by the plaintiff as correct, as evidenced by the following allegation in his petition:

"The plaintiff further alleges that at the time of the execution of said bond or undertaking by the said W. E. Cecil as principal and the defendant Fidelity & Deposit Company of Maryland as surety it was intended by the said W. E. Cecil and the said defendant Fidelity & Deposit Company of Maryland that said defendant Fidelity & Deposit Company of Maryland guaranteed, not only that W. E. Cecil would perform fully and faithfully his contract with the W. E. Callahan Construction Company for the construction of said three miles of irrigation ditches as aforesaid, but that the said W. E. Cecil would pay all persons the sums of money due and to become due for supplies, teams, equipment, material and labor used in the performance of his said contract, as well as to pay any and all other expenses due other persons by reason of the expenses incurred in the performance or attempted performance of said contract by the said W. E. Cecil; that at the time of the execution of said bond it was expressly agreed and intended by the said W. E. Cecil and the defendant Fidelity & Deposit Company of Maryland that the said Fidelity & Deposit Company of Maryland guaranteed the payment of and to any and all persons for supplies and material of whatsoever nature furnished to the said W. E. Cecil in the performance of said contract, but said provision was through mistake and inadvertence by all parties omitted from said bond."

No evidence was introduced to sustain the allegation of mistake and inadvertence alleged in that pleading. We think the following authorities support our conclusion that plaintiff was not entitled to sue upon the bond as a beneficiary: National Bank of Cleburne v. G., C. & S. F. Ry., 95 Tex. 176, 66 S. W. 203; Gen. Bonding & Casualty Co. v. Waples Lumber Co. (Tex. Civ. App.) 176 S. W. 651, writ of error denied; Oak Cliff Lumber Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429. In National Bank of Cleburne v. Railway Co., supra, a contractor for railway construction work executed a bond to the railway company with two conditions, which may be briefly summarized as follows: First, to do the work in accordance with the stipulations in the contract executed by it with the railway company; and, second, to pay all laborers, mechanics, and materialmen who might supply the contractor with provisions or goods of any kind. The contractor issued pay checks to laborers for their services in the work undertaken, and the plaintiff bank sued on those checks as assignee. The Supreme Court, in answer to certified question, held that the laborers were not beneficiaries, and the bank as their assignee was not entitled to sue upon the bond by reason of the fact that the language of the bond clearly showed it to be a contract of indemnity to. the railway company. And in that opinion the court further said:

"We are not prepared to hold that the railroad company might not have required of the contractors a bond binding them and sureties to pay all debts contracted with persons for labor, material, or other things necessary to the performance of the contract, whether the claims might be asserted against the railroad company's property as a lien or not; and that under such a contract, if it had been made, the materialmen and the laborers might sustain an action against the contractors and their sureties upon the bond."

And, as said in the opinion in the Mosher Mfg. Company Case, the decision in the case of National Bank of Cleburne v. Ry. Co., supra, was clearly distinguishable from the

Mosher Mfg. Company Case, it follows that the latter case is distinguishable also from the case at bar, since the conditions in the bond now under discussion were substantially the same as the National Bank of Cleburne Case.

In the General Bonding & Casualty Insurance Co. v. Waples Lumber Co. Case, supra, the bond was conditioned as the bond in the present suit, viz., that the contractor would do the work which he had contracted to do in accordance with the requirements of his contract, and would pay for all material and labor used in the construction of the building. Those conditions were substantially the same as the conditions in the bond now under consideration, and the present case cannot be distinguished from that case; and, as noted, the Supreme Court denied a writ of error in that case.

It follows from the foregoing conclusion that the judgment of the trial court must be reversed and the judgment here rendered for appellant independently of the merits of the second contention advanced by appellee that the groceries which he furnished to the employés of Cecil were "supplies" within the meaning of the bond sued on; an itemized account of the articles so furnished being attached to plaintiff's petition, and consisting of all kinds of groceries, vegetables, fruit, hay, bran, oats, tobacco, etc. This contention is strongly controverted by the appellant, and many authorities are cited pro and con on the question presented. The authorities cited by appellant include such as Carson & Co. v. Shelton, 128 Ky. 248, 107 S. W. 793, 15 L. R. A. (N. S.) 509; Seventh National Bank v. Shenandoah Iron Co. (C. C.) 35 F. 436; Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621; and other decisions cited in the opinion in the last-cited case, including Lion Bonding & Surety Co. v. First State Bank (Tex. Civ. App.) 194 S. W. 1012. The authorities cited by appellee to show that the articles furnished by the plaintiff were supplies within the meaning of the contract and bond include the following: Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; Clatsop County ex rel. August Hildebrand v. Feldschau, 101 Or. 369, 199 P. 953, 18 A. L. R. 1221; Title Guaranty & Surety Co. v. State ex rel. Leavenworth State Bank, 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19.

It would unduly extend this opinion to fully discuss those authorities, and, since a determination of that question in favor of the appellee would not change the conclusion reached that the judgment should be reversed for the reasons already stated, we shall not undertake to determine the merits of this question.

The judgment of the trial court is reversed, and judgment is here rendered in favor of appellant.

### On Motion for Rehearing.

In copying the bond sued on a clerical error was made which will now be corrected. In quoting one of the conditions of the bond the following occurs in the original opinion: "And if the said W. E. Callahan shall pay all sums of money due and to become due for supplies, teams and equipment," etc. The name W. E. Cecil should have appeared in the place and stead of "W. E. Callahan." However, the bond as shown in the record and not as copied in the petition was the one considered by us.

After carefully considering the able argument of appellee in his motion for rehearing and that of appellant in reply thereto, we have concluded that the motion should be overruled, and it is so ordered.