# The Union National Bank of Pittsburgh v. Dillsburg Borough Authority et al.

*Fisher, Ports & May,* and *Wells Fay,* for plaintiff.

*Martin B. Ebbert,* for Dillsburg Authority.

*Anstine & Shadle,* for Capitol Engineering Corporation.

*Guy W. Bange,* for Hanover Trust Company.

ANDERSON, J., March 20, 1951.—This proceeding comes before the court on preliminary objections filed by each of the three defendants in the action. As required by rule 1028 defendants have raised all pertinent objections to plaintiff's complaint at one time and have literally "shelled the woods." We shall deal herein with the objections filed by defendant Dillsburg Borough Authority.

The facts in brief are as follows: Under date of November 16, 1948, Dillsburg Borough Authority entered into a contract in writing with Sharpsburg Construction Company for the construction and installation of a sewage system in the Borough of Dillsburg. Bonds conditioned for performance of the work

and payment of labor and material were furnished as required by law, with Peerless Casualty Company as surety. Pursuant to the contract Sharpsburg Construction Company began prosecution of the work and continued with the same until February 10, 1950. In order to finance the project the contractor made loan arrangements with plaintiff, Union National Bank of Pittsburgh, and assigned to the bank all sums due from time to time to the contractor from Dillsburg Authority. The authority was notified of the assignment, is alleged to have accepted it and agreed to make remittances directly to the bank in accordance with its terms. Hanover Trust Company, trustee under the bond issue to finance the project, made remittances directly to the bank pursuant to the assignment for several months. On February 10, 1950, the authority declared the contract in default pursuant to the terms of the contract, at which time the work was taken over and continued by Peerless Casualty Company, surety on the various contractors' bonds. This action was brought by plaintiff bank to recover a specific sum, to wit, $6,801.75, for work, labor and material furnished by the contractor during the month ending December 31, 1949, which sum is alleged to have become payable not later than January 15, 1950, upon certification by the engineer. Plaintiff claims there are other sums due and owing under the contract for which it seeks an accounting.

The first objection is a motion to strike off the complaint for the reason that plaintiff has failed to attach the contract or material parts thereof as required by rule 1019 (h). The original contract is attached to the pleadings but the complaint states that the contract documents, consisting of a bound volume of 302 pages, are not attached due to their size and bulk and are in the possession or readily available to defendants and

will be produced at the trial.. In fact a copy of this volume by agreement of counsel was handed to the court at the argument and since several phases of the objections depend upon these documents the court will assume that these documents have been incorporated by reference and will not sustain the first objection. Since all agree as to the validity of the documents it would seem an unnecessary burden and expense to compel plaintiff to copy over 300 pages so as to attach same as an exhibit. This objection is therefore dismissed.

The second objection is that the averments of paragraph 6 of the complaint and a portion of paragraph 7, to wit: ... "and presumably let in accordance with law" are impertinent and mere surplusage in that it is alleged that the contract was entered into without true competitive bidding. This objection is well taken and is sustained. Plaintiff may not in one paragraph bring a suit based upon a contract as a valid and binding obligation and in another paragraph allege that the contract was not legally entered into by the parties.

The next objection raised by defendant is in the nature of a motion for a more specific complaint, alleging that the averments of paragraph 15 and the prayers of the complaint are so vague, indefinite and uncertain that defendant should not be required to answer them and further that the averments do not constitute a simple and concise statement of the facts as required. These averments in general ask for an accounting and it may be that plaintiff is so entitled. These objections are therefore dismissed at this time.

The third and final group of objections is in the nature of a demurrer to the complaint for failure to state a valid cause of action. A number of grounds are alleged which we shall take up seriatim.

Paragraph 8 of the demurrer alleges that exhibit B of the complaint is not a valid legal assignment since

it does not show the titles or offices of the parties executing the same. This objection is not valid and is dismissed. The instrument itself names the signer thereof as the president of the corporation, the corporate seal is attached and in addition defendant is estopped from denying the validity of the assignment, for, accepting the allegations of the complaint to be true, as we must at this stage of the proceedings, we find that defendant for eight months relied and acted upon the authority of this assignment.

"An estoppel may be raised by acquiescence, where a party aware of his own rights, sees the other party acting upon a mistaken notion of his rights. 'The rule is well recognized that when a party with full knowledge, or with sufficient notice or means of knowledge of his rights and of all the material facts, remains inactive for a considerable time or abstains from impeaching the transaction, so that the other party is induced to suppose that it is recognized, this is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable' ": Kennedy's Estate, 321 Pa. 225, 232.

The doctrine of estopped also applies to objections nos. 9 and 10, which will also be dismissed. These objections assert that the acceptance of the assignment by C. S. Williams for the authority is not valid since it shows no authority for his action and consequently is not binding on the Dillsburg Borough Authority, and further that no written consent of the Capitol Engineering Corporation to this assignment is averred as required by the contract document. In addition, as to objection 9, it has been well established that in the absence of proof to the contrary the law presumes that a public official's actions were pursuant to proper authority and that the antecedent steps necessary to give validity to his official acts were duly taken: McIntosh Road Materials Co. v. Woolworth et al., 365 Pa. 190.

Objection number 11 raises the point that the estimate, upon which this suit is based, plaintiff's exhibit E, certified by the engineer covering the work done during the preceding calendar month and used as the basis of payment to the contractor, has not been approved for payment by the engineer as required by paragraph 3-36(a) of the contract documents. It is true that this exhibit indicates on its face that it has been certified as correct by the engineer but has not been approved for payment. As the pleadings stand this would seem to be a valid objection and would justify both the authority and the bank in refusing to pay on the estimate, for approval for payment by the engineer is a condition precedent. If there was some reason for the engineer not approving the payment, as there apparently must have been, the contractor was not without remedy for the contract documents provide for the submission to arbitration of decisions in dispute involving time or financial considerations. Or if the dispute was not in that category the contractor could have immediately resorted to court to enforce payment. At the argument it was submitted by plaintiff that this exhibit E is the contractor's copy and that plaintiff does not know whether or not the original was actually approved by the engineer. However, plaintiff is bound by its own pleadings and this objection is sustained.

Objections 12, 13 and 14 assert generally that plaintiff's complaint must fail and the demurrer must be sustained because there is no averment that the work has been completed, which is a condition precedent in order to maintain an action under the general conditions of the contract documents. Defendant further contends that since the complaint itself alleges that the authority declared the contract in default, under the terms of the contract documents all moneys remaining in the hands of the authority constituted a fund

for the completion of the work and payment of the contractor's obligations as defined in the general conditions of the contract documents. These objections seem to be well founded. The pertinent provisions of the contract are as follows:

"Paragraph 3-06 (a) Unless otherwise stipulated, the contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work."

"Paragraph 3-17 (a) If the contractor should . . . persistently or repeatedly refuse or should fail . . . to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payments to subcontractors or for material or labor or persistently disregard . . . instructions of the engineer, or otherwise be guilty of a substantial violation of any provision of the contract . . . then the owner . . . may, . . . terminate the employment of the contractor and take possession of the premises and of all materials, tools and appliances thereon and advance the work by whatever method he may deem expedient. (b) *In such case the Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the Contract price shall exceed the expense of finishing the work, including compensation for additional managerial and administrative services, such excess shall be paid to the Contractor.* If such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. The expense incurred by the Owner as herein provided, and the damage incurred through the Contractor's default, shall be certified by the Engineer."

Paragraph 3-20 (a) *The Owner may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate to such extent as may be necessary to protect himself from loss on*

*account of:* (1) Defective work not remedied. (2) Claims filed or reasonable evidence indicating probable filing of claims. (3) Failure of the Contractor to make. payments properly to subcontractors or for materials or labor. (4) A reasonable doubt that the Contract can be completed for the balance then unpaid." (Italics supplied.)

The law seems well settled that when a contractor is held in default and the surety upon his bond is called upon to complete the work, the surety under the contract succeeds to the rights of the defaulting contractor and is entitled to any and all sums due the defaulting contractor to indemnify itself against all losses on account of the contract.

"When default on the contract was declared against Wells and those under him, the surety was called upon to complete the contract in accordance with the obligation assumed by it with the city; the surety, on electing to complete, stood in a new relation to the contract. It was in direct relation to defendant as a party contracting to complete the work, becoming so on the contractor's default. In agreeing to finish the work, it exercised its rights under the contract and bond, stepping into the shoes of the contractor, operating under the contract as though a party originally alternately bound by its terms: See Phila. vs. Nichols Co., 214 Pa. 265, 273. It was not a new engagement but a continuation of the old one, wherein the surety succeeded to all the rights of the contractor under the contract, as well as liabilities to the owner thereunder. As to any money retained, the surety then stands to that fund in the same position as the owner of the property to which the contract relates. The surety's relation, through compulsion (default), dates even with the owner's relation. From this fund and the unpaid contract price it is entitled to sufficient to save itself from loss on its suretyship engagement; nor can

the contractor, by assignment or otherwise, deprive it of this right": Wells, to use, v. Philadelphia, 270 Pa. 42, 46.

"This neither partner did; but, on the contrary, knowing the surety was completing the work, and because thereof became entitled to all payments then or thereafter due . . ." Markee et al. v. Philadelphia, 270 Pa. 337, 341.

"Assuming that the construction obligation was a completion bond and the surety had been called in to complete (which it had not been in this case), if the surety completed the building it would have been entitled to be reimbursed for its outlay in completing the contract whatever that outlay may have been. . . . In that respect it would also stand in the position of the owner [Wells, to use, v. Phila., supra], and might subject any sums or securities in the owner's hand to accomplish that purpose": Sundheim v. Philadelphia School District, et al., 311 Pa. 90, 99.

It seems manifestly apparent under the contract and the law applicable thereto that this action is premature and that if plaintiff has a right of action it can be brought only after the work has been completed and the cost of completion ascertained. Since the demurrer in effect must be sustained it is unnecessary to pass upon objection no. 15 at this time.

We therefore enter the following order insofar as defendant Dillsburg Borough Authority is concerned:

And now, to wit, March 20, 1951, it is ordered, adjudged and decreed that defendant's objections nos. 1, 4, 5, 6, 8, 9 and 10 are dismissed. Objections no. 2, 3, 7, 11, 12, 13 and 14 are sustained. Judgment, however, is not to be entered on the demurrer until 45 days after the filing of a certificate of completion as required by the contract documents; notice of the filing thereof to be given to plaintiff in writing. During this

45-day period plaintiff may file, if desired, with leave of court, additional supplementary pleadings consistent with this opinion and the contract documents.